**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNION INSURANCE COMPANY | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: |
| | ) | |
| v. | ) | |
| | ) | |
| CSAC, INC.,; and SADE M. | ) | |
| CRAWFORD, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

NOW COMES Plaintiff UNION INSURANCE COMPANY ("Union") by and through the undersigned attorneys, and for its Complaint for Declaratory Judgment against Defendants CSAC, INC. ("CSAC") and SADE M. CRAWFORD ("Crawford"), it states as follows:

**NATURE OF ACTION**

1.      Plaintiff Union is an insurance company that issued two consecutive Commercial Lines Policies to Schicker Automotive Group/McMahon Ford Company Inc., among others, providing commercial general liability coverage for the policy period of May 18, 2019, to May 18, 2020, and May 18, 2020, to May 18, 2021, respectively.   Union brings this Complaint for Declaratory Judgement pursuant to 28 U.S.C. §§ 2201, *et seq*. and Rule 57 of the Federal Rules of Civil Procedure to seek a judicial declaration that it has no duty to defend or indemnify Defendant CSAC in connection with an underlying Second Amended Counterclaim filed by Sade M. Crawford against CSAC in litigation styled *CSAC, Inc. v. Sade Crawford*, case number 1522-AC03346-02, which is pending in the 22nd Judicial Circuit Court for St. Louis City, Missouri.

1

2.     There exists an actual and justiciable controversy among the parties concerning their respective rights, duties, and obligations under and pursuant to the Union Policies.  Union contends that there is no obligation to defend or indemnify CSAC in connection with the Second Amended Counterclaim asserted in the underlying lawsuit based on the terms of the Union Policies and applicable law.

3.     Union has no adequate remedy at law and, therefore, desires a judicial determination of its rights and duties in accordance with the Union Policies.  A judicial declaration is necessary and appropriate at this time so that Union may ascertain its rights and duties with respect to defense and indemnity of CSAC under the Union Policies for the underlying Crawford Second Amended Counterclaim.

## THE PARTIES

4.     Plaintiff Union is, and at all relevant times has been, a corporation organized under the laws of Iowa with its principal place of business in Urbandale, Iowa.  At all relevant times, Union was an insurance company whose policies may be sold throughout the country, including in Missouri.

5.     Defendant CSAC, Inc., is, and at all relevant times has been, a Missouri corporation with its principal place of business in St. Louis County, Missouri.

6.     Defendant Sade M. Crawford is a citizen and resident of St. Louis City, Missouri. Crawford is the lead plaintiff in the underlying Crawford counterclaim and is joined as a defendant herein as a necessary party pursuant to Rule 19 of the Federal Rules of Civil Procedure and so that she may be bound by the judgment entered in this case. If Defendant executes a stipulation agreeing to be bound by any judgment entered herein, Union will voluntarily dismiss Crawford from this action.

## JURISDICTION

7      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) in that the citizenship of the parties is diverse and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

## VENUE

8.      Venue is appropriate in this district pursuant to 28. U.S.C. § 1391(a), in that the underlying injuries or damages occurred in this district and a substantial part of the events giving rise to this claim occurred in this district. Further, the Union Policies were issued to Schicker Automotive Group/McMahon Ford Company Inc. in this judicial district.

## FACTUAL BACKGROUND

9.      On or about March 19, 2015, CSAC filed a lawsuit against Sade M. Crawford ("Crawford"), cause number 1522-AC03346-02, in the 22nd Judicial Circuit Court for St. Louis City, Missouri, to recoup a deficiency amount owed to CSAC pursuant to a retail installment contract and security agreement Crawford executed to secure the purchase of a motor vehicle in 2011.

10.      Prior to filing suit, CSAC had repossessed Crawford's vehicle and sold the car at a private sale, purportedly providing both the presale and post-sale notices to Crawford required under Missouri law. The sale resulted in a deficiency on Crawford's loan of approximately $5,039.02, which CSAC sought to collect in the 2015 lawsuit.

11.      Crawford filed an Answer and Counterclaim to CSAC's Amended Petition in 2016.

12.      On August 22, 2017, Crawford filed a First Amended Counterclaim against CSAC and sought certification for a class-action lawsuit (the "First Amended Counterclaim"). A copy of the First Amended Counterclaim is attached hereto as **Exhibit A**.

3

13     The First Amended Counterclaim alleged that CSAC's presale and post-sale notices were deficient under Missouri law and/or the UCC, and that CSAC communicated false and defamatory statements regarding the individual class members to credit reporting agencies in connection with the default and repossession of class members' vehicles.

14.     Crawford alleged that the entire class suffered actual damages, including loss of use of tangible property and cost of alternative transportation; loss resulting from the inability to obtain, or increased costs of, alternative financing; harm to credit worthiness, credit standing, credit capacity, character, and general reputation; harm caused by defamation, slander and libel; harm caused by invasion of privacy; and other uncertain and hard-to-quantify actual damages.

15.     On September 30, 2019, Crawford filed a Second Amended Counterclaim against CSAC and sought certification of the counterclaim as a class-action lawsuit (the "Second Amended Counterclaim").  A copy of the Second Amended Counterclaim is attached hereto as **Exhibit B**.

16.     The Second Amended Counterclaim alleges that the presale and post-sale notices mailed to Crawford and other consumers did not comply with the UCC and Missouri law.  It is alleged that the presale notices violated section 400.9-611 because they were not authenticated, not signed, and did not identify the person adopting and accepting the notice; misstated the amount owed to redeem; and were otherwise inaccurate or misleading.

17.     The Second Amended Counterclaim also alleges that the post-sale notices violated section 400.9-616 because the information in the notices were inaccurate, did not provide all information required by statute, misstated the aggregate amount of obligation and the amount of deficiency, and were misleading and inaccurate.

18.     Crawford also alleges that CSAC violated section 408.553 by charging interest during the time after Crawford's and other consumers' alleged defaults and before CSAC obtained a deficiency judgment against them.

19.     Further, the Second Amended Counterclaim alleges that CSAC failed to give the right to cure notice required by section 408.554 or mailed defective right to cure notices to Crawford and other consumers, and wrongfully charged interest after default but before a final judgment in violation of statute, rendering the presale notices unreasonable and misleading.

20.     The Second Amended Counterclaim also alleges that CSAC has a practice and policy of reporting derogatory information regarding class members to local consumer reporting agencies and the three national consumer credit reporting agencies, Equifax, Experience, and TransUnion.

21.     The Second Amended Counterclaim includes a single cause of action sounding in "UCC Violations."  Crawford alleges that as a result of CSAC's failure to comply with the requirements of the UCC set out above, Crawford and other members of the class suffered actual damages comprised of loss of use of tangible property and the cost of alternative transportation; loss from the inability to obtain, or increased costs of, alternative financing; harm to credit worthiness, credit standing, credit capacity, character, and general reputation; harm caused by defamation, slander and libel; harm caused by invasion of privacy; and other actual damages.

22.     On January 31, 2020, the underlying trial court granted Crawford's Second Amended Motion for Class Certification certifying a class of plaintiffs defined as "all persons who CSAC mailed a presale notice or post-sale notice.  Excluded from the class are persons whom CSAC has obtained a final deficiency judgment or who filed for bankruptcy after the date on their presale notice and whose bankruptcy ended in discharge rather than dismissal."

23.     Union first received notice of the Crawford counterclaim, First Amended Counterclaim, and Second Amended Counterclaim from CSAC's counsel by letter dated June 2, 2020.

## THE UNION POLICIES

24.     Union issued two consecutive Commercial Lines Policies, policy numbers CPA 3221921-20 and CPA 3221921-21, to Schicker Automotive Group and other scheduled Insureds, for the policy periods of May 18, 2019, through May 18, 2020 (the "2019-20 Policy"), and May 18, 2020, through May 18, 2021 (the "2020-21 Policy"), respectively.  A copy of the 2019-20 Policy is attached hereto as **Exhibit C**.  A copy of the 2020-21 Policy is attached hereto as **Exhibit D**.

25.     The 2019-20 Policy and the 2020-21 Policy include an identical coverage form and insuring agreement, and many of the same policy endorsements and attachments.  For ease of reference, and unless otherwise specified, the 2019-20 Policy and the 2020-21 Policy are hereinafter referred to collectively as the "Union Policies."

26.     The Union Policies include several coverage parts including Commercial General Liability, Commercial Property, Auto Dealers, Commercial Inland Marine, and Excess Liability Coverage.  Commercial Property and Inland Marine, as first party coverages, do not apply to this claim, and therefore, are not addressed herein.

27.     Additionally, based on the allegations of the Second Amended Counterclaim, the Auto Dealers Coverage part also does not apply.  Accordingly, the Union Policies' Commercial General Liability Coverage is the only potentially applicable coverage to the Crawford Second Amended Counterclaim and the only coverage part relevant in this declaratory action.

28.     Under the Commercial General Liability Coverage part, the Union Policies, respectively, include limits of $1,000,000 per "occurrence," $1,000,000 for "personal and advertising injury" offense, and $2,000,000 in the general aggregate.

29.     CSAC is the only defendant named in Crawford's original and amended Counterclaims.  CSAC, however, is not identified as a "Named Insured" in the declarations of the 2019-20 Policy or the 2020-21 Policy.

30.     Whereas "CSAC, Inc." is identified as an additional named insured on the 2020-21 Policy's "Schedule of Named Insureds," CSAC is not included or identified as an insured or additional named insured in or under the 2019-20 Policy.

31.     Accordingly, CSAC does not qualify as an insured under the 2019-20 Policy, and therefore, is not entitled to coverage under the 2019-20 Policy.

**I.      Relevant Provisions of the Union Policies**

**(A)     Coverage A (Bodily Injury And Property Damage Liability)**

32.     The Insuring Agreement, Section I., COVERAGES, Coverage A ("Bodily Injury And Property Damage Liability") of the 2020-21 Policy provides, in relevant part, the following:

> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1.     Insuring Agreement**
>
> **a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. […]
>
> * * *

7

        **b.**    This insurance applies to "bodily injury" and "property damage" only if:

            **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

            **(2)**    The "bodily injury" or "property damage" occurs during the policy period; and

            **(3)**    Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

* * *

33.    Section V., DEFINITIONS, (as amended) include the following relevant definitions:

        **3.**    "Bodily injury" means bodily injury, disability, sickness or disease sustained by a person, including death resulting from any of these at any time.  "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury".

* * *

        **13.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

* * *

        **17.**    **"**Property damage" means:

        **a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be

8

> deemed to occur at the time of the physical injury that caused it; or
>
> **b.**     Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
>
> For the purposes of this insurance, electronic data is not tangible property.
>
> * * *

34.     The Union Policies also include an exclusion 2.a (Expected Or Intended Injury) that provides that this insurance does not apply to:

> **a.**     **Expected Or Intended Injury**
>
> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

35.     The Second Amended Counterclaim does not satisfy the Insuring Agreement of the 2020-21 Policy in that it does not allege "bodily injury" or "property damage" caused by an "occurrence."

36.     Crawford alleges that CSAC's presale and post-sale notices were defective because they included inaccurate and misleading information due to CSAC's failure to comply with the UCC and applicable law, and that CSAC's defective notices ultimately resulted in repossession of the class members' vehicles and later sale at auction.

37.     Accordingly, the Second Amended Counterclaim does not allege any physical or bodily injury, disability, sickness, or disease sustained by any person (i.e., "bodily injury") as defined by the Union Policies.

38.     Moreover, the Second Amended Counterclaim does not include allegations of physical injury to or loss of use of tangible property, i.e., "property damage" as defined by the

9

Union Policies.

39.     To the extent "bodily injury" or "property damage" is alleged in the Second Amended Counterclaim, which is denied, CSAC's intentional act of repossessing the vehicles is not an "occurrence" as defined by the Union Policies and/or precluded by exclusion 2.a (Expected or Intended Injury).

40.     In addition to the above, Coverage A only applies to "bodily injury" or "property damage" that occurs during the Policy period.

41.     The Second Amended Complaint was filed in September 2019, before inception of the 2020-21 Policy period.

42.     Further, the underlying trial court granted Crawford's motion for class certification on January 31, 2020, approximately 5-months prior to the inception of the 2020-21 Policy.

43      Consequently, neither the Second Amended Counterclaim nor the certified class of counterclaimants include any allegations of "bodily injury" or "property damage" taking place during the 2020-21 Policy period, which was not yet in existence at the time the Second Amended Complaint was filed or class certified by the underlying trial court.

44.      Accordingly, no covered injury or damage is alleged to have occurred during the 2020-21 Policy period.

**(B)     Coverage B (Personal and Advertising Injury Liability)**

45.     Section I., COVERAGES, Coverage B ("Personal and Advertising Injury Liability") of the 2020-21 Policy provides, in relevant part, the following:

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.     Insuring Agreement**

    **a**.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. […]

* * *

    **b**.   This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

46.    The 2020-21 Policy defines the term "personal and advertising injury" as follows:

    **14.**   "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.**   False arrest, detention or imprisonment;

    **b.**   Malicious prosecution;

    **c.**   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.**   Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.**   Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.**   The use of another's advertising idea in your "advertisement"; or

    **g.**   Infringing upon another's copyright.

47.     Coverage B of the 2020-21 Policy only applies to a "personal and advertising injury" offense that occurs during the policy period.

48.     The Second Amended Complaint was filed in September 2019, before inception of the 2020-21 Policy period.

49.     Further, the underlying trial court granted Crawford's motion for class certification on January 31, 2020, approximately 5-months prior to the inception of the 2020-21 Policy.

50.     Consequently, neither the Second Amended Counterclaim nor the certified class of counterclaimants include any allegations of a "personal and advertising injury" offense taking place during the 2020-21 Policy period, which was not yet in existence at the time the Second Amended Complaint was filed or class certified by the underlying trial court.

51.     In addition to the above, the Union Policies, Coverage B., include an exclusion 2.a. (Knowing Violation Of Rights Of Another), which provides that this insurance does not apply to:

    **a.**    **Knowing Violation Of Rights Of Another**

> "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

52.     The Union Policies, Coverage B., also include an exclusion 2.b (Material Published With Knowledge of Falsity) that provides that this insurance does not apply to:

    **b.**    **Material Published With Knowledge Of Falsity**

> "Personal and advertising injury" arising out of oral or written publication, in any manner, of material if done by or at the direction of the insured with knowledge of its falsity.

53.     The Union Policies, Coverage B., also include an exclusion 2.c (Material Published Prior to Policy Period), which provides that this insurance does not apply to:

c.      **Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written
publication, in any manner, of material whose first publication took
place before the beginning of the policy period.

54.     The first allegations of alleged derogatory and defamatory conduct committed by
CSAC were included in the original and amended counterclaims filed in 2016 and 2017,
respectively.

55.     The Second Amended Counterclaim also alleges that CSAC reported false and
derogatory information about class members to various credit reporting agencies, all of which,
necessarily, took place prior to the inception of the 2020-21 Policy period, which was not in
existence at the time the Second Amended Counterclaim (or prior counterclaims) was filed.

56.     To the extent the Second Amended Counterclaim satisfies the Insuring Agreement
under Coverage B, which Union contends it does not, and/or CSAC committed any "personal and
advertising injury" offense during the 2020-21 Policy period, the "knowing violation,"
"knowledge of falsity," and/or "prior publication" exclusions bar coverage.

## COUNT I – DECLARTORY JUDGMENT
### (CSAC, Inc. Not An Insured Under 2019-20 Policy)

57.     Union adopts and re-alleges the allegations in paragraphs 1 through 56 of its
Complaint for Declaratory Judgment as paragraph 57 of Count I of its Complaint for Declaratory
Judgment as if fully set forth herein.

58.     CSAC is the only defendant named in Crawford's original and amended
counterclaims, including the Second Amended Counterclaim.

59.     CSAC, however, is not identified as a "Named Insured" in the declarations of the
2019-20 Policy or the 2020-21 Policy.

60.     CSAC is also not included or identified as an insured or additional named insured in the "Schedule of Named Insureds" in the 2019-20 Policy.

61.     CSAC is not otherwise identified as an "insured," "additional insured" or on any other basis in or under the 2019-20 Policy.

62.     Accordingly, CSAC does not qualify as an insured under the 2019-20 Policy, and therefore, is not entitled to coverage under the 2019-20 Policy for the Second Amended Counterclaim.

WHEREFORE, Union is entitled to a judicial declaration that it has and had no duty to defend, indemnify, pay, or reimburse CSAC, Inc., in connection with the underlying Crawford Second Amended Complaint under the 2019-20 Policy, and for any other relief this Court deems just and equitable.

<u>COUNT II – DECLARATORY JUDGMENT</u>
<u>("Known Loss" and/or "Loss in Progress")</u>

63.     Union adopts and re-alleges the allegations in paragraphs 1 through 62 of its Complaint for Declaratory Judgment as paragraph 63 of Count II of its Complaint for Declaratory Judgment as if fully set forth herein.

64.     Crawford first filed an Answer and Counterclaim to CSAC's Amended Petition in the underlying lawsuit in 2016.

65.     On August 22, 2017, Crawford filed a First Amended Counterclaim against CSAC and sought certification for a class-action lawsuit, alleging claims for CSAC's failure to provide statutorily compliant presale and post-sale notices to Crawford and putative class members under the UCC and Missouri law before disposing of collateral secured by loans entered by, assigned to, or owned by CSAC.   See Exh. A., First Amended Counterclaim.

66.     Crawford filed a Second Amended Counterclaim against CSAC on September 19, 2019, and sought certification of the counterclaim as a class-action lawsuit, including a single cause of action sounding in "UCC Violations."  See Exh. B., Second Amended Counterclaim.

67.     The allegations and claims of the Second Amended Counterclaim are materially identical to those made in earlier pleadings, including the First Amended Counterclaim against CSAC, including that CSAC's presale and post-sale notices were deficient under Missouri law and/or the UCC, and that CSAC communicated false and defamatory statements regarding the individual class members to credit reporting agencies in connection with the default and repossession of class members' vehicles.

68.     On January 31, 2020, the underlying trial court granted Crawford's Second Amended Motion for Class Certification certifying a class of plaintiffs defined as "all persons who CSAC mailed a presale notice or post-sale notice.  Excluded from the class are persons whom CSAC has obtained a final deficiency judgment or who filed for bankruptcy after the date on their presale notice and whose bankruptcy ended in discharge rather than dismissal."

69.     The 2020-21 Policy incepted on May 18, 2020, and had a one-year policy term from May 18, 2020, to May 18, 2021.  See Exh. D., 2020-21 Policy.

70.     CSAC was properly served with Crawford's original and amended counterclaims, including the First Amended Counterclaim and Second Amended Counterclaim, filed answers/replies to each counterclaim, and actively participated in the underlying litigation and counterclaims asserted against CSAC prior to inception of the 2020-21 Policy.

71.     Union first received notice of the Crawford counterclaim, First Amended Counterclaim, and Second Amended Counterclaim from CSAC's counsel by letter dated June 2, 2020.  Counsel's June 2, 2020, Tender Correspondence is attached hereto as **Exhibit E**.

72.     At the time the 2020-21 Policy incepted, and prior to any notice of the claim or potential claim to Union, CSAC was already engaged in litigation, specifically defense of the First, and then Second Amended Counterclaim, and therefore knew or had reason to know that there was a substantial probability that CSAC would suffer a potential loss (or already had suffered loss), including defense costs, when the 2020-21 Policy was purchased and issued.

73.     Insuring a known loss or loss in progress is against the fundamental principle of insurance law that the loss be "fortuitous" and is against public policy.

74.     Accordingly, coverage under the 2020-21 Policy is barred by the "known loss" and/or "loss in progress" doctrines.

WHEREFORE, Union is entitled to a judicial declaration that it has and had no duty to defend, indemnify, pay, or reimburse CSAC, Inc., in connection with the underlying Crawford Second Amended Complaint under the 2020-21 Policy, and for any other relief this Court deems just and equitable.

### COUNT III – DECLARATORY JUDGMENT
### (No Coverage Under Coverage A, Bodily Injury And Property Damage
### Liability Coverage, Of The Union Policies)

75.     Union adopts and re-alleges the allegations in paragraphs 1 through 74 of its Complaint for Declaratory Judgment as paragraph 75 of Count III of its Complaint for Declaratory Judgment as if fully set forth herein.

76.     Union does not owe a duty to defend or indemnify CSAC for the Crawford Second Amended Counterclaim under the terms or provisions of Coverage A, Bodily Injury and Property Damage Liability Coverage, of the Union Policies for the following reasons:

> A. The Second Amended Counterclaim fails to allege "bodily injury" or "property damage" caused by an "occurrence," and therefore, fails to satisfy the Insuring Agreement, Section I-COVERAGES, Coverage A. (Bodily Injury And Property Damage Liability), of the Union Policies;

B. The Second Amended Counterclaim fails to allege any "bodily injury" or "property damage" occurring during the policy period of the Union Policies, and therefore, fails to satisfy the Insuring Agreement, Section I-COVERAGES, Coverage A. (Bodily Injury And Property Damage Liability), of the Union Policies;

C. Even if the allegations of Second Amended Counterclaim allege "bodily injury" or "property damage," which is denied, prior to the inception of the 2020-21 Policy, CSAC and/or its authorized employees, knew that "bodily injury" or "property damage" had occurred, in whole or in part, and therefore, and therefore, fails to satisfy subsection b.(3) of the Insuring Agreement; and/or

D. Even if the allegations of the Second Amended Counterclaim satisfy the Insuring Agreement of the Union Policies, which is denied, Exclusion 2.a. (Expected Or Intended Injury) bars coverage;

## COUNT IV – DECLARATORY JUDGMENT
### (No Coverage Under Coverage B, Personal And Advertising Injury Liability Coverage, Of The Union Policies)

77.    Union adopts and re-alleges the allegations in paragraphs 1 through 74 of its Complaint for Declaratory Judgment as paragraph 77 of Count IV of its Complaint for Declaratory Judgment as if fully set forth herein.

78.    Union does not owe a duty to defend or indemnify CSAC for the Crawford Second Amended Counterclaim under the terms or provisions of Coverage B, Personal And Advertising Injury Liability Coverage, of the Union Policies for the following reasons:

A. The Second Amended Counterclaim fails to allege a "personal and advertising injury" offense occurring during the policy period, and therefore, fails to satisfy the Insuring Agreement, Section I-COVERAGES, Coverage B. (Personal And Advertising Injury Liability), of the Union Policies;

B. Even if the allegations of the Second Amended Counterclaim satisfy the Insuring Agreement of the Union Policies, which is denied, Exclusion 2.a. (Knowing Violation Of Rights Of Another) bars coverage;

C.  Even if the allegations of the Second Amended Counterclaim satisfy the Insuring Agreement of the Union Policies, which is denied, Exclusion 2.b. (Material Published With Knowledge of Falsity) bars coverage; and/or

D.  Even if the allegations of the Second Amended Counterclaim satisfy the Insuring Agreement of the Union Policies, which is denied, Exclusion 2.c. (Material Published Prior To Policy Period) bars coverage.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff UNION INSURANCE COMPANY prays that this Honorable Court declare and adjudicate the rights and liabilities of the parties regarding the 2019-20 Policy and the 2020-21 Policy generally, and to grant the following specific relief:

a.   Declare that CSAC, Inc. is not an "insured," "additional insured," or additional named insured under the 2019-20 Policy, and therefore, is not insured or otherwise entitled to coverage for the Crawford Second Amended Counterclaim under the 2019-20 Policy;

b.   Declare that Union has and had no duty to defend, indemnify, pay, or reimburse CSAC, Inc., Crawford, or any other party in connection with the Crawford Second Amended Counterclaim under the Union Policies; and\

c.   Grant such other and further relief as it deems just and equitable.

Dated this ___7th___ day of November, 2022.

Respectfully submitted,

SCHREIMANN, RACKERS
& FRANCKA, L.L.C.

/s/ Ryan Bertels
Chris Rackers, #41894
Ryan Bertels, #55167
931 Wildwood Drive, Suite 201
Jefferson City, MO 65109
573-634-7580
573-635-6034 (facsimile)
cpr@srfblaw.com
rb@srfblaw.com

and

Dana A. Rice (*To be admitted pro hac vice*)
Jason M. Taylor (*To be admitted pro hac vice*)
TRAUB LIEBERMAN
STRAUS & SHREWSBERRY, LLP
303 W. Madison Street, Suite 1200
Chicago, Illinois 60603
312.332.3900
312.332.3908 (f)

Attorneys for Plaintiff Union Insurance
Company