UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNION INSURANCE COMPANY | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 4:22-cv-01180 |
| | ) |
| CSAC, INC. and SADE M. CRAWFORD, | ) |
| | ) |
| Defendants. | ) |

### Defendants' Memorandum to Support the Motion to Dismiss or Stay

Defendants, through counsel, submit this memorandum to support their motion to dismiss or stay Plaintiff Union Insurance Company's ("Union") Complaint for Declaratory Judgment. The insurance coverage issue asserted by Union addresses no matter of Federal law and can be more appropriately adjudicated in the pending parallel state court action styled *CSAC, Inc. v. Sade Crawford*, case number 1522-AC03346-02, which is pending in the 22nd Judicial Circuit Court for St. Louis City, Missouri—the same case underlying Union's request for a determination of its right and duties regarding defense and indemnity. This is a state court matter. No federal question is involved. The applicability of CSAC, Inc.'s ("CSAC") insurance coverage to the injuries of Sade M. Crawford ("Crawford") (and the class she represents) is better left to the state court to decide. Union will suffer no prejudice by litigating this coverage issue in the state court action pending in the 22nd Judicial Circuit Court for St. Louis City, Missouri.

### Background

Crawford obtained financing through CSAC for the purchase of a car (consumer good covered by the UCC). (Doc. No. 1–6 p. 5). After she defaulted, CSAC mailed Crawford a right-to-cure notice informing her she was in default and it would repossess her car unless the default was cured. (*Id.*) She didn't cure the default, so CSAC repossessed the car. (*Id.*) Then CSAC mailed a

1

form presale notice to Crawford advising her of its intent to dispose of the repossessed car in purported compliance with the UCC. (*Id.*) Crawford didn't redeem the car, so CSAC sold it and sent Crawford a form post-sale notice explaining how it calculated the alleged deficiency balance. (*Id.*) The highest bidder paid CSAC $850 for a car it sold to Crawford for nearly $7,000 only seven months earlier. (*Id.*)

CSAC sued Crawford for the alleged deficiency balance after selling her car. (Doc. No. 1 ¶ 9). Crawford counterclaimed for herself and a class of similarly situated consumers, seeking relief to redress an allegedly unlawful pattern of wrongdoing followed by CSAC regarding collection, enforcement, and disposition of collateral, and collection of alleged deficiency balances. (Doc. No. 1–3 ¶ 1). Crawford alleged CSAC's violations of Missouri's Uniform Commercial Code (UCC) and other Missouri law caused Crawford and other members of the class to suffer actual damages comprised of loss of use of tangible property and the cost of alternative transportation; loss from the inability to obtain, or increased costs of, alternative financing; harm to credit worthiness, credit standing, credit capacity, character, and general reputation; harm caused by defamation, slander and libel; harm caused by invasion of privacy; and other uncertain and hard-to-quantify actual damages. (Doc. No. 1–3 ¶ 91).

Crawford moved for class certification. (Doc. No. 1–6 p. 5). The Court granted class certification of "a class comprising all persons to whom CSAC mailed a presale or post-sale notice." (*Id.* at 11). "Excluded from the class are persons from whom CSAC has obtained a final deficiency judgment or who file for bankruptcy after the date on their presale notice and whose bankruptcy ended in discharge rather than dismissal." (*Id.*). CSAC sought permission to appeal the certification order, which the Missouri Court of Appeals denied on February 13, 2020. (Ex. 1).

2

On June 20, 2020, CSAC advised Union of Crawford's claims and the certification of the class and requested Union to advise whether there was coverage. (Doc No. 1–6 pp. 1–4). On February 18, 2021, Union denied coverage. (Ex. 2). On November 4, 2022, CSAC and Crawford, as member and representative of the certified class, entered a "Class Action Settlement Agreement and Release" ("Settlement"). (Ex. 3). The Settlement permits the class to take a judgment against CSAC in an amount to be determined by the state court and satisfied from Union's insurance coverage of CSAC. (Ex. 3 ¶ 3.14). On November 7, 2022, CSAC and Crawford sought preliminary approval of the settlement. (Ex. 4). That same day, Union filed its Complaint for Declaratory Judgment with this Court. (Doc. No. 1).

On December 6, 2022, the state court granted preliminary approval of the Settlement. (Ex. 5). On January 9, 2023, the class administrator mailed notice of the Settlement to the class, and a final fairness hearing is set for April 6, 2023. (*Id.* ¶¶ 9, 14).

**Argument**

Where (as here) a federal lawsuit seeks relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, the United States Supreme Court has recognized that federal courts have "greater discretion" to "decline to enter a declaratory judgment" when there is a parallel action pending in state court. *Wilton v. Seven Falls Co.,* 515 U.S. 277, 286–87 (1995); *accord Royal Indem. Co. v. Apex Oil Co.,* 511 F.3d 788, 792–93 (8th Cir. 2008) (recognizing "in a declaratory judgment action, a federal court has broad discretion to abstain from exercising jurisdiction even if there are no exceptional circumstances as articulated in *Colorado River*") (citation omitted). The guiding inquiry is "'whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court.'" *Id.* at 282 (quoting *Brillhart v. Excess Ins. Co. of Am.,* 316 U.S. 491, 494 (1942)). "Rendering a declaratory judgment where there are parallel state court proceedings

3

and no issues of federal law would ordinarily be uneconomical as well as vexatious." *GEICO Cas. Co. v. Isaacson*, 932 F.3d 721, 724 (8th Cir. 2019) (quoting *Brillhart*, 316 U.S. at 495).

"A district court may dismiss or stay a declaratory judgment action when it determines that the question in controversy would be better handled in state court." *Greenwich Ins. Co. v. Matt Murray Trucking*, No. 4:21CV202 DDN, 2021 WL 4902326, at *3 (E.D. Mo. Oct. 21, 2021) (citing *Royal Indem. Co. v. Apex Oil Co.*, 511 F.3d 788, 793 (8th Cir. 2008)). "The determination of whether suits are parallel 'is a threshold determination for identifying the extent of a district court's discretion to grant a stay.'" *Burgett v. Hellickson*, No. 4:16CV622 AGF, 2016 WL 7230429, at *3 (E.D. Mo. Dec. 14, 2016) (quoting *Lexington Ins. Co. v. Integrity Land Title Co.*, 721 F.3d 958, 968 (8th Cir. 2013)). "State and federal proceedings are parallel 'if they involve the same parties or if the same parties may be subject to the state action and if the state action is likely to fully and satisfactorily resolve the dispute or uncertainty at the heart of the federal declaratory judgment action.'" *Id.*

Here, this declaratory judgment action and the Missouri state court action are parallel for purposes of the abstention doctrine. *Id.*; *Greenwich Ins. Co.*, 2021 WL 4902326, at *4. CSAC and Crawford are parties to this action and the state court action. The state court case "underlying this case do[es] not yet include [Union] as a party and [it does] not yet include the [Union] Policy coverage issues [Union] alleges here," but if the Missouri circuit court enters a judgment against CSAC as contemplated in the Settlement, "it is a *virtual certainty* that [Union] and the scope of the [Union] Policy coverage will play important roles in subsequent proceedings in the state cases, because … a successful claimant in those cases will likely seek to collect on the [Union] Policy by garnishment under Mo. S. Ct. R. 90 or under Rev. Stat. Mo. § 379.200." *Greenwich Ins. Co.*, 2021

4

WL 4902326, at *4 (citing *Allen v. Bryers*, 512 S.W.3d 17, 30 (Mo. banc 2016)); *see also Columbia Cas. Co. v. HIAR Holding, L.L.C.*, 411 S.W.3d 258, 261 (Mo. banc 2013) ("After the class and the insured reached a settlement, the class filed a garnishment action against the insurer."). Indeed, the Settlement contemplates the class seeking a garnishment against Union after final approval and entry of a judgment. (Ex. 3 ¶ 3.14).

The scope and nature of the Missouri state court proceeding renders it "a superior vehicle to resolve the issues between the parties…." *Burgett*, 2016 WL 7230429, at *3. "No federal claims or defenses are involved in either action." *Id.* Union alleges Crawford is a necessary party. (Doc. No. 1 ¶ 6). If true, it logically follows that each of the thousands of class members she represents in the state action are necessary parties. "A decision in favor of [Union] in this federal action, involving only [Crawford and CSAC] as adversaries, may not be binding on nonparties, who are parties in the [Missouri] state court action." *Id.*; *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1349 (2013) ("A nonnamed class member is not a party to the class-action litigation *before the class is certified*").

"Further, other claims that could impact the result are included in the state court action." *Id.* For example, Crawford and the class will ask the state court to determine the extent of the damages caused by CSAC, if any, based on "libel/slander/defamation, invasion of privacy, and other uncertain or hard to quantify damages." (Ex. 3 ¶ 3.14). This will affect whether there is coverage for "loss of use of tangible property," which not only includes the class member's vehicles but their tangible property inside the vehicles. (Doc. No. 1 ¶ 38). It will also affect whether there is coverage for "personal and advertising injury" (*id.* ¶ 46) and whether CSAC's alleged violations covered by the definition of "personal and advertising injury" were a "knowing violation" or done with "knowledge of falsity." (*Id.* ¶ 56).

5

"In sum, … *Wilton* abstention is warranted here." *Burgett*, 2016 WL 7230429, at *3. Because "the pending state court proceeding would better settle the issues, 'the district court must dismiss the federal action…." *Greenwich Ins. Co.*, 2021 WL 4902326, at *5 (quoting *Evanston Ins. Co. v. Johns*, 530 F.3d 710 (8th Cir. 2008)). Alternatively, the Court should stay this action pending resolution of the parallel case in the Missouri state court. *Burgett*, 2016 WL 7230429, at *3–4.

Even if this action and the Missouri action are not parallel, this Court should still dismiss or stay the case under the six-factor test of *Scottsdale Ins. Co. v. Detco Inds., Inc.*, 426 F.3d 994 (8th Cir. 2005). The factors include:

> (1) whether the declaratory judgment sought will serve a useful purpose in clarifying and settling the legal relations in issue; (2) whether the declaratory judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the federal proceeding; (3) the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in the state courts; (4) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; (5) whether permitting the federal action to go forward would result in unnecessary entanglement between the federal and state court systems, because of the presence of overlapping issues of fact or law; and (6) whether the declaratory judgment action is being used merely as a device for procedural fencing—that is, to provide another forum in a race for res judicata or to achieve a federal hearing in a case otherwise not removable.

*Id.* at 998 (internal quotation marks and brackets omitted) (cleaned up). These factors all weigh against maintaining the declaratory judgment action for the reasons discussed above.

Factors 1 and 2 will not serve a useful purpose and afford relief from the uncertainty without joining all the class members as parties (which under Union's logic are necessary parties to this action). Factor 3 also weighs against maintaining this action because while "the claims now before the state court presents no issues regarding the construction of the [Union] policy, that will quickly change" if a judgment is entered against CSAC in the state court. *Greenwich Ins. Co.*,

6

2021 WL 4902326, at *6. As to Factor 4, "the resolution of the coverage issue raised in this declaratory action will be more efficiently decided by the state court. While [Union] is not now a party to the state court actions and those cases do not now involve Policy coverage issues, that will change if" a judgment is entered against CSAC under the Settlement. *Id.* As to Factors 5 and 6, there are overlapping issues of fact or law to be decided by the state court in its judgment and this declaratory judgment action will result in unnecessary entanglement, and the timing of Union's declaratory judgment action (i.e., the day Crawford and CSAC sought preliminary approval) shows Union was seeking another forum in a race for res judicata or to achieve a federal hearing in a case otherwise not removable.

## Conclusion

Defendants request the Court to dismiss Union's Complaint for Declaratory Judgment or stay this case pending resolution of the parallel case in the Missouri state court and for such further relief as the Court considers just, fair, and proper.

| **ONDERLAW, LLC** | **HEPLER BROOM LLC** |
|---|---|
| By: */s/ Martin L. Daesch* <br> Martin L. Daesch, #40494 <br> Jesse B. Rochman #60712 <br> Craig W. Richards #67262 <br> 110 E. Lockwood <br> St. Louis, MO 63119 <br> Phone: (314) 963-9000 <br> Fax: (314) 963-1700 <br> daesch@onderlaw.com <br> rochman@onderlaw.com <br> richards@onderlaw.com <br> *Counsel for Defendant Sade M. Crawford* | By: */s/ Charles N. Insler* <br> Thomas J. Magee (32871MO) <br> Charles N. Insler (58623MO) <br> 701 Market Street, Suite 1400 <br> St. Louis, MO 63101 <br> Phone: 314-241-6160 <br> Fax: 314-241-6116 <br> tm1@heplerbroom.com <br> cni@heplerbroom.com <br> *Counsel for Defendant CSAC, Inc.* |