**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| UNION INSURANCE COMPANY ) | |
| ) | |
| ) | |
| Plaintiff, ) | Case No.: 4:22-cv-01180-AGF |
| ) | |
| v. ) | |
| ) | |
| CSAC, INC.,; and SADE M. ) | |
| CRAWFORD, ) | |
| ) | |
| Defendants. ) | |

**UNION INSURANCE COMPANY'S SUGGESTIONS**
**IN OPPOSITION TO DEFEDNANTS' MOTION TO DISMISS OR STAY**

Plaintiff UNION INSURANCE COMPANY ("Union"), by and through the undersigned attorneys, and for its Suggestions in Opposition to Defendants', CSAC, Inc. and Sade M. Crawford ("Defendants"), Motion to Dismiss or Stay Plaintiff's Complaint for Declaratory Judgment (Doc. #28, Doc. #29), it states as follows:

## INTRODUCTION

This is an insurance coverage action arising out of an underlying class action lawsuit styled *CSAC, Inc. v. Sade Crawford*, case number 1522-AC03346-02, which is pending in the 22nd Judicial Circuit Court for St. Louis City, Missouri (the "State Court Action"). Union issued two consecutive Commercial Lines Policies to non-party Schicker Automotive Group/McMahon Ford Company Inc., among others, providing commercial general liability coverage for the policy period of May 18, 2019, to May 18, 2020, and May 18, 2020, to May 18, 2021, respectively. (See Union Policies, Doc #1-4 and #1-5). Defendant CSAC, Inc. ("CSAC") is identified as an additional named insured on the 2020-21 Union Policy's "Schedule of Named Insureds," but is

1

not included or identified as an insured or additional named insured in or under the 2019-20 Union Policy.  (*Id.*)

In 2015, CSAC filed the State Court Action against Defendant Sade M. Crawford ("Crawford"), to recoup an alleged deficiency amount owed to CSAC pursuant to a retail installment contract and security agreement Crawford executed to secure the purchase of a motor vehicle in 2011.  Crawford counterclaimed asserting claims against CSAC for alleged violations of Missouri's Uniform Commercial Code and common law seeking statutory damages and other relief for herself and a class of similarly situated individuals (the "Crawford Counterclaim").  (See Doc. #1-2 and #1-3).  On or about November 4, 2022, CSAC and Crawford, as member and representative of the certified class, entered into a "Class Action Settlement Agreement and Release" ("Settlement").  A copy of the Settlement is attached hereto as **Exhibit 1**.  In addition to setting the terms and procedures for settlement with the class, the Settlement purports to permit the class to take a judgment against CSAC in an amount to be determined in the State Court Action, ostensibly to be satisfied from Union's (and potentially other insurers') insurance coverage for CSAC, if any.  Exh. 1, ¶3.14.

Union filed this action for declaratory judgment seeking a judicial declaration that Union has and had no duty to defend or indemnify CSAC in connection with the State Court Action. (Doc. #1).  As a threshold issue, the Crawford Counterclaim was initially filed in 2016, with amended counterclaims filed in August 2017 and finally in September 2019, all prior to inception of the 2020-21 Union Policy.  By the time Union issued either of its policies, CSAC had been sued and defending the State Court Action *for years* such that when the Union Policies were issued, it was already a known or existing loss to CSAC.  Thus, while the Complaint for Declaratory Judgment seeks to address several other coverage issues raised by the State Court Action, a

threshold issue will be whether an insured, such as CSAC, can obtain insurance coverage from a new and unsuspecting insurance carrier for litigation and losses that have already occurred or commenced.

This Court has proper subject matter jurisdiction pursuant to 28 U.S.C. §1332(a), and venue is also proper in this Court. (See Doc. #1, ¶¶4-7). Defendants, jointly, filed a Motion to Dismiss or Stay this action arguing that the Court does not have and/or should not exercise jurisdiction over the Complaint. Defendants argue that because they hope to secure a future uncontested consent judgment against CSAC in the State Court Action, this Court should dismiss (or stay) this action in favor of "the state court case." Doc. #28, p.1; Doc. #29, pp. 4-5. While their arguments are somewhat vague, Defendants appear to argue that *the State Court Action* will or should decide the insurance coverage issues raised by Union here. That argument, however, is incorrect and flawed. The State Court Action will only resolve the tort claims (and damages) between the class and CSAC – not insurance coverage issues. Union is not a party to the State Court Action and that proceeding will not (and indeed cannot) address insurance coverage issues. Accordingly, the State Court Action is not a "parallel proceeding." Further, there is no judgment against CSAC at this time in the State Court Action and no proceedings to move to secure a judgment. In fact, the Settlement – and contemplated uncontested future judgment against CSAC – is contingent upon full and final approval of the class action settlement itself, which has not yet occurred.[1] Exh. 1, ¶¶2.4, 8.2, 12.

Defendants have filed the instant – and premature – Motion to Dismiss, seeking to strip this Court of its authority and jurisdiction by arguing that the Court must abstain from hearing this

---

[1] According to Defendants, further proceedings on the class settlement are not even scheduled to resume until April 6, 2023, where the parties and state court will conduct a fairness hearing regarding the class settlement. Doc. # 29, p. 3.

3

case and defer to the state trial court to "enforce" Defendants' future, hypothetical judgment against Union.  For the reasons discussed below, none of the arguments advanced by Defendants support, much less compel, a dismissal of this action. Accordingly, Defendants' Motion to Dismiss should be denied.

## LEGAL STANDARD

Defendants have moved to dismiss this case under "Rule 12(b)" of the Federal Rule of Civil Procedure.  Consideration of a motion to dismiss based on principles of abstention is similar to a motion to dismiss for lack of subject matter jurisdiction. *Stein v. Legal Advert. Comm. of Disciplinary Bd.*, 272 F. Supp. 2d 1260, 1264 (D.N.M. 2003). In order to properly dismiss for lack of subject matter jurisdiction, "the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). On review of the Court's own subject matter jurisdiction, the Court may consider matters outside the pleadings without converting the motion into a motion for summary judgment. *Satterlee v. United States*, 432 F. Supp. 2d 941, 945 (W.D. Mo. 2006), aff'd sub nom. *Satterlee v. I.R.S.*, 252 F. App'x 117 (8th Cir. 2007).

## ARGUMENT

This Court should deny Defendants' Motion to Dismiss for three reasons. First, their motion is not ripe, as it is premised on the incorrect assertion that the State Court Action can and will resolve insurance coverage issues raised by Union in this case.  In truth, Defendants base their Motion on the existence of a hypothetical, future state court proceeding that has not been filed. The State Court Action is not a "parallel proceeding," and because no action presently exists in which to address Union's coverage issues, there is no other action for this Court to defer to at this time.

Second, Defendants do not, because they cannot, dispute that Union's Declaratory Judgment Action is properly before this Court. Nor can they make any legitimate claim that this Court lacks the jurisdiction or authority to resolve any and all claims that might exist between the parties now. Given the unresolved nature of the underlying Crawford Counterclaim and approval of the class Settlement, let alone the unknown date or time of a future "judgment" against CSAC, judicial economy would be best served by litigating the parties' insurance coverage claims together in the only action that is currently on file.

Third, Defendants have offered no reason, let alone a compelling one, as to why they cannot litigate the very same insurance claims they wish to make in "the state court case" (which, again, is the incorrect venue for such claims) in the case at bar. There's no telling when (or if) the class settlement will be approved, and when any subsequent future "judgment" will be entered against CSAC in the State Court Action. This Court can address and resolve issues of Union's duty to defend and/or indemnify CSAC in this action here and now. Accordingly, allowing this case to remain and proceed before this Court will once again promote judicial economy.

For these reasons, which are discussed more fully below, this Court should deny Defendants' Motion to Dismiss.

I. **THERE EXISTS NO "PARALLEL PROCEEDING" WHICH WILL DECIDE THE INSURANCE COVERAGE ISSUES RAISED IN THIS ACTION**

Certainly, federal district courts have discretion in determining whether to entertain an action for declaratory judgment. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 288-89 (1995). The scope of a district court's discretion to abstain from exercising jurisdiction under the Declaratory Judgment Act depends on whether a "parallel" state court action exists. *Amco Ins. Co. v. Columbia Maint. Co.*, 2020 U.S. Dist. LEXIS 42117, at *5 (E.D. Mo. Mar. 11, 2020) (citing *Scottsdale Ins. Co. v. Detco Indus., Inc.*, 426 F.3d 994, 997 (8th Cir. 2005)). "If so, a district court enjoys broad

5

discretion, guided by judicial economy." *Id.* "If not, district courts have more limited discretion to abstain." *Id.* "Thus, the threshold question for determining whether the Court should dismiss or stay this case is 'whether there are parallel proceedings in state court that present an opportunity for the same issues to be addressed.'" *Atain Specialty Ins. Co. v. Frank*, 2013 U.S. Dist. LEXIS 196454, at *6 (W.D. Mo. Mar. 25, 2013) (internal citation omitted).

Suits are parallel if "substantially the same parties litigate substantially the same issues in different forums." *Scottsdale Ins. Co.*, 426 F.3d at 997 (citations omitted). Stated another way, "state proceedings are parallel if they involve the same parties or if the same parties may be subject to the state action and if the state action is likely to fully and 'satisfactorily' resolve the dispute or uncertainty at the heart of the federal declaratory judgment action." *Lexington Ins. Co. v. Integrity Land Title Co.*, 721 F.3d 958, 968 (8th Cir. 2013).

In *Scottsdale Ins. Co.*, *supra*, Scottsdale Insurance Company ("Scottsdale") initiated a federal declaratory judgment action to seek a finding that it had no duty to defend or indemnify its insured, Detco Industries, Inc. ("Detco") in multiple state court lawsuits arising out of a fire and explosion at Detco's facility. In finding that the declaratory action and the underlying lawsuits were not parallel proceedings, the Court reasoned that the state court actions did not involve "substantially the same issues" as the declaratory judgment action, because the "suits in state court involve issues regarding Detco's liability relating to the January 2005 fire and explosion at its facility, whereas the federal suit between Detco and Scottsdale involve matters of insurance coverage." *Scottsdale Ins. Co.*, 426 F.3d at 997. The Eighth Circuit went on to say that "[a]lthough, as the district court noted, the issues in each proceeding may depend on some of the same facts, that circumstance does not compel a conclusion that the suits are parallel, for the state court proceedings involve parties, arguments, and issues different from those in the federal court

6

proceedings." *Id.* Therefore, the court concluded that the coverage action and the underlying lawsuit were not parallel proceedings for purposes of the Abstention Doctrine. *See also Lexington Ins. Co.*, 721 F.3d at 971 (E&O insurer's federal declaratory judgment action against insured abstractor was not a parallel action with title insurer's state court actions against abstractor); *Amco Ins. Co.*, 2020 U.S. Dist. LEXIS 42117, at *5-6 (finding that an underlying arbitration and a federal declaratory judgment action were not parallel proceedings since the insurers were not parties to the arbitration and therefore any judgment from the arbitrator as to insurance coverage would not bind the insurers).

As in *Scottsdale*, *supra*, the State Court Action does not involve "substantially the same issues" as this Declaratory Judgment action. Moreover, Defendants appear to conflate the State Court Action and a future, hypothetical state court lawsuit when arguing the cases are "parallel." The State Court Action involves issues regarding CSAC's liability under the Missouri Commercial Code and whether its pre- and post-sale repossession notices to a class of individuals violated applicable law. Presently, the parties are attempting to notify the class members of the proposed settlement, and will conduct further hearings regarding the fairness of the Settlement and any potential objections to the Settlement. By contrast, this suit involves matters of insurance coverage and Union's obligation to defend or indemnify CSAC for the Crawford Counterclaim. While interpretation of the insurance contract may require review of the underlying pleadings and allegations, the issues in this coverage action and the State Court Action are not "substantially similar" sufficient to warrant abstention of this action. *Scottsdale Ins. Co.*, 426 F.3d at 997.

Moreover, Union is not a party to the State Court Action, and contrary to Defendants' arguments, the coverage issues and contractual interpretation of the Union Policies <u>will not</u> be determined in the State Court Action. Defendants argue that if or once a judgment is entered

7

against CSAC, "it is a virtual certainty" that the class will proceed against Union in *the State Court Action*. This is inaccurate. The proper procedure (absent an already pending declaratory judgment action) would be for Crawford or the class to file a separate equitable garnishment action pursuant to Mo. Rev. Stat. § 379.200. Of course, no such action has been (and indeed cannot be) filed at this time, and it is questionable when (or if) such an action will accrue as there has been no final judgment against CSAC.

Thus, Union is not a participant[2] in the underlying liability suit and any judgment entered in the State Court Action would not address or be binding on Union as to its insurance coverage obligations for any future, hypothetical judgment against Defendant CSAC. *Amco Ins. Co.*, 2020 WL 1170232, at *6. Because the State Court Action involves parties, facts, and legal issues different from those in this case, this declaratory judgment action is not a "parallel proceeding" to the State Court Action.

## II. THE TIMING OF A FUTURE JUDGMENT IS SPECULATIVE, AND THEREFORE, JUDICIAL ECONOMY FAVORS RETAINING JURISDICTION

At a minimum, the underlying class action settlement has not been approved and will not be approved before April 6, 2023, when the court conducts a final fairness hearing in the State Court Action. (See Doc. #29, p.3). Even then, the Settlement is contingent upon final court approval and the parties' agreement not to rescind the Settlement prior to such approval, which both potentially turn on class member notice or objections to the class settlement. See e.g. Exh 1., ¶¶ 2.4 (Failure of Condition); 8.2 (Opt-Out Limit); and 12 (Failure of Condition). Finally,

---

[2] Contemporaneously with filing of Union's Suggestions in Opposition to Defendants' Motion to Dismiss or Stay, Union intends to file a Petition to Intervene in the State Court Action as a matter of right under Mo. Sup. Ct. R. 52.12(a) and Mo. Rev. Stat. § 537.065 **for the limited purpose of contesting or challenging liability and/or additional damages of the class, where they will not otherwise be contested or subject to any scrutiny whatsoever**. **Even if the state court grants Union's Petition to Intervene, the State Court Action will not address or decide any coverage issue or duties under the Union Policies, which should be decided separately in this Coverage Action**.

Crawford would still then have to prove up its alleged additional "uncertain and hard to quantify damages" to obtain a judgment against CSAC in the State Court Action above and beyond the settlement sum the class is already set to receive.  Exh 1., ¶3.14.  That Defendants jump through these hoops and hurdles is thus not a guarantee, and when such claim against Union actually ripens is speculative and unknown.

Defendants cannot dispute that Union's Declaratory Judgment Action is properly before this Court.  Nor can they make any legitimate claim that this Court lacks the jurisdiction or authority to resolve any and all claims that might exist between the parties now.  Given the unresolved, contingent nature of the underlying Crawford Counterclaim and approval of the class settlement, in addition to the unknown date or time of a future "judgment" against CSAC, judicial economy and fundamental fairness would be best served by litigating the parties' insurance coverage claims in this forum, now, in the only action that currently exists.

### III. THERE IS NO DISPUTE THAT UNION'S INSURANCE COVERAGE CLAIMS CAN BE ADDRESSED BY THE DISTRICT COURT, AND SIX FACTOR *SCOTTSDALE* TEST FAVORS RETAINING JURISDICTION

Federal courts across the country have routinely afforded great deference to a plaintiff's chosen forum. See, e.g., *Century HLM, LLC v. CardioQuip, LP*, 2020 U.S. Dist. LEXIS 24338, at *9 (E.D. Mo. Feb. 12, 2020), objections overruled, 2020 U.S. Dist. LEXIS 38831 (E.D. Mo. Mar. 4, 2020). This rule applies equally to an insurance company who, like any plaintiff, has the right to litigate its dispute in a forum of its choice so along as it can satisfy the jurisdictional requirements of the selected forum. Here, there can be no dispute that the requirements for diversity jurisdiction have been met in this case as there is diversity in the citizenship of the parties as Union is a citizen of Iowa, and Defendants are citizens of Missouri; and the amount in controversy exceeds the Court's $75,000 threshold. (See Doc. #1, ¶¶4-7). Union chose this forum

to litigate its insurance coverage claims, and this Court has jurisdiction over the parties to hear and decide those claims. Defendants' Motion has offered no compelling reason why this Court cannot resolve these claims here and now.

In addition to the above, six factors may also guide the District Court's analysis of determining whether to proceed with a federal declaratory judgment action in the absence of a parallel state action. Those factors include (1) whether the declaratory judgment sought will serve a useful purpose in clarifying and settling the legal relations at issue; (2) whether the declaratory judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the federal proceeding; (3) the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in state courts; (4) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action in pending; (5) whether permitting the federal action to go forward would result in unnecessary entanglement between the federal and state court systems, because of the presence of overlapping issues of fact or law; and (6) whether the declaratory judgment action is being used merely as a device for procedural fencing—that is, to provide another forum in a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable. *Scottsdale Ins. Co.*, 426 F.3d at 998. Careful consideration of these factors favors the Court's retention of jurisdiction.

Here, the first and second factors weigh in favor of retaining jurisdiction, where "[t]he declaratory judgment would 'clarify and settle' the legal relations at issue and would afford relief from the 'uncertainty, insecurity, and controversy' between [Union] and [the insured]." *Id.*, at 999; *see also Lexington Ins. Co.*, 721 F.3d at 971 (noting that in regard to the first, second, and fourth factors, "[r]esolution of coverage issues in state court was by no means certain and the presence of multiple unrelated issues made *efficient* resolution even less certain. In contrast, the coverage

issues regarding the E & O policy were front and center in the federal case"). Union is asking the District Court to decide both its duty to defend and indemnify CSAC in connection with the claims made in underlying State Court Action, and in particular, whether CSAC's notice and litigation of claims *for years* prior to issuance of the Union Policies precludes coverage (among other defenses). The near certainty that a coverage ruling will clarify and settle the contractual obligations and rights between Union and CSAC strongly favors this Court retaining jurisdiction over this action.

As to the third factor, Missouri courts have held "the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in state courts" is neutral (at best). *Amco Ins. Co.*, 2020 U.S. Dist. LEXIS 42117, at *8. In other words, the state court does not have a special interest in resolving routine insurance policy construction disputes and issues of Missouri contract law that are commonly before the District Court. *Id.* (citing *State Farm Fire & Cas. Co. v. Pit Stop Bar & Grill, LLC*, 2015 U.S. Dist. LEXIS 102901 (E.D. Mo. Aug. 6, 2015). Like *Amco Ins. Co.*, Union' Declaratory Judgment Action involves a routine insurance-policy construction dispute, which Missouri courts have no special interest in deciding. This factor also favors Union, or at a minimum is neutral.

The fourth factor of whether the issues raised in the federal action can more efficiently be resolved in the state court where the tort action is pending, also favors Union. As the Eighth Circuit has noted, "in the absence of a pending parallel state court proceeding, judicial economy would be best served by deciding [the] action initially in the federal court" because it is less likely that the claims of all parties in interest can satisfactorily be adjudicated in the state court proceeding. *Scottsdale Ins. Co.*, 426 F.3d at 999. Here, there is no dispute that Union is not a party to the State Court Action and the contractual insurance coverage issues in this action will not be decided in the

11

state court. Thus, judicial economy is better served by deciding the coverage issues in this case, which favors Union and retaining jurisdiction over the coverage action.

The fifth factor also favors Union, as allowing this federal action to go forward would not result in unnecessary entanglement between the federal and state court systems. Here, Union is asking the District Court to decide its contractual obligation on both its duty to defend and indemnify CSAC for litigation commenced years before the Union Policies were ever issued (among other coverage defenses). These issues are independent of any factual findings to be determined in the State Court Action. Further, to the extent it is necessary for this Court to address the other coverage defenses raised in this case, the duty to defend "is ascertained by comparing the allegations made in the underlying complaint to the policy language." *See Wolfe Automotive Group, LLC v. Universal Underwriters Ins. Co.*, 808 F.3d 729, 732 (8th Cir. 2015) (citing *Piatt v. Indiana Lumbermen's Mut. Ins. Co.*, 461 S.W.3d 788, 792 (Mo. 2015). Thus, an insurer does not have a duty to defend where the petition on its face alleges facts that fail to bring the case within the policy's coverage. *Trainwreck West Inc. v. Burlington Ins. Co.*, 235 S.W.3d 33, 42 (Mo. Ct. App. 2007). Further, where there is no duty to defend, there can be no duty to indemnify. *Wolfe Automotive Group, LLC*, 808 F.3d at 732 (citations omitted). Again, these determinations can be made as a matter of law and will not require this Court to resolve factual questions at all. Thus, the danger of "entanglement" between the coverage action and the state court action is minimal and "[a]ny overlapping issues of fact are insignificant." *Scottsdale Ins. Co.*, 426 F.3d at 999.

Finally, Union has not used this declaratory action as a "procedural fencing" device. Defendants have not offered any actual, let alone convincing, evidence that Union has engaged in such tactics merely by filing this coverage action in the District Court. Procedural fencing occurs when a party has filed in "another forum in a race for res judicata or to achieve a federal hearing

12

in a case otherwise not removable." *Scottsdale,* 426 F.3d at 998.  Defendants surmise that because the coverage action was filed "the day Crawford and CSAC sought preliminary approval" of the underlying class action settlement, Union's actions are somehow nefarious.  The timing, however, is purely coincidental.  To be sure, Union and CSAC entered a Tolling Agreement in May 2021, which CSAC unilaterally terminated in May 2022.  After termination of the Tolling Agreement, Union again requested that CSAC withdraw its tender of coverage to Union to avoid potential coverage litigation, to which CSAC ultimately refused.  At that point, Union prepared and filed its coverage action in this Court (which it advised CSAC it would do in the event CSAC declined to withdraw its tender).  In fact, Union was never provided a copy of the executed Settlement from CSAC (or Crawford) until February 14, 2023, when the Settlement was filed as an exhibit to CSAC/Crawford's Motion to Dismiss or Stay this case.[3]  CSAC and Crawford have never provided a copy of their motion to preliminarily approve the Settlement to Union at any time.

Union has not raced to file this action to achieve a favorable forum.  The scope of coverage under the Union Policies presented in this action is not an issue in the State Court Action, thus there has been no "race" for a more favorable forum to decide issues common to the underlying state suit.  There is a live and serious question of whether coverage exists for CSAC under the Union Policies, and Union has appropriately sought a declaratory judgment in federal court to clarify and settle its contractual duties to its insured.  There is no question that diversity jurisdiction is proper, and no dispute that venue in this District is appropriate based on the location of the underlying transactions and domicile of the Defendants.  Moreover, Union is not asking the Court to make factual determinations that are material to the claims asserted by the underlying parties in

---

[3] The Motion to Dismiss or Stay the Coverage Action was filed on February 8, 2023, however, a copy of the actual Settlement agreement itself was not filed with the original Motion to Dismiss or Stay, but was later filed with the District Court on February 14, 2023.

13

the State Court Action. As discussed above, the District Court is routinely asked to render a judgment on the carrier's duty to defend (and potentially duty to indemnify), without over-stepping its authority or prejudicing parties to the underlying tort action. That is all Union is asking the Court to do here, which does not support the inference that Union is "forum shopping" or "procedural fencing."

For the foregoing reasons, each of the six factors in *Scottsdale Ins. Co.* favor Union and weigh strongly in favor of this Court retaining jurisdiction in this case. Accordingly, Defendants' "Rule 12(b)" Motion to Dismiss or Stay should be denied.

## CONCLUSION

In this case, Union seeks a declaratory judgment that it has no duty to defend, and correspondingly, no duty to indemnify CSAC in the underlying State Court Action. Union is entitled to a declaration of its rights and obligations under the Union Policies in this Court. This common exercise of the District Court's jurisdiction to hear and decide declaratory judgment actions regarding an insurer's duty to defend and indemnify its insured does not invade the province of the underlying state court or impermissibly interfere with the State Court Action. Exercise of the Court's jurisdiction is proper in this case and will materially and efficiently advance the interests of the parties as respects those coverage issues raised in Union's Complaint.

As shown above, the State Court Action is not a "parallel proceeding" and there is no other state court action for the Court to defer to at this time. Likewise, as the District Court is not being asked to decide any determinative issues of fact in the State Court Action, a stay is equally unnecessary. Accordingly, Defendants' "Rule 12(b)" Motion to Dismiss or Stay should be denied.

Dated this 8th day of March, 2023.

Respectfully submitted,

*/s/ Jason M. Taylor*
_____

Dana A. Rice (*admitted pro hac vice*)
drice@tlsslaw.com
Jason M. Taylor (*admitted pro hac vice*)
jtaylor@tlsslaw.com
TRAUB LIEBERMAN
STRAUS & SHREWSBERRY, LLP
71 S. Wacker Dr., Ste. 2110
Chicago, Illinois 60603
312.332.3900
312.332.3908 (f)

and

Scott Hofer
shofer@bakersterchi.com
Kevin D. Brooks
kbrooks@bakersterchi.com
Baker Sterchi Cowden & Rice LLC
1200 Main Street, Suite 2200
Kansas City, Missouri  64105
816.472.7474

*Attorneys for Plaintiff UNION INSURANCE COMPANY*

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on March 8, 2023, the foregoing was filed electronically with the Clerk of Court, therefore to be served electronically by operation of the Court's electronic filing system upon all counsel of record.

                                           */s/ Jason M. Taylor*
                                           _____