# EXHIBIT 1

# Settlement Agreement

Electronically Filed - City of St. Louis - November 07, 2022 - 01:23 PM

### CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This SETTLEMENT AGREEMENT AND RELEASE ("Agreement"), made subject to approval by the Court, is by and between Sade Crawford ("Crawford") and sometimes referred to herein as "Class Representative," individually and as the representative of the Class, as defined herein, and CSAC, Inc. ("CSAC"). The Class Representative, CSAC, and the Class are also sometimes individually referred to as "Party" and collectively referred to as the "Parties."

WHEREAS, Class Representative is the named counterclaimant in the civil action pending before the St. Louis City Missouri Circuit Court (the "Court"), *CSAC, Inc. v. Sade M. Crawford*, Case No. 1522-AC03346-02 (the "Counterclaim" or "Litigation"); and

WHEREAS, Class Representative is asserting claims against CSAC for alleged violations of Missouri's Uniform Commercial Code and common law, and seeks statutory damages and other relief for herself and a class defined by the Court's order entered January 31, 2020; and

WHEREAS, on January 31, 2020, the Court certified a class comprised of "all persons to whom CSAC mailed a presale notice or post-sale notice." The Court excluded from the Class all "persons whom CSAC has obtained a final deficiency judgment or who filed for bankruptcy after the date on their presale notice and whose bankruptcy ended in discharge rather than dismissal." Class

WHEREAS, Class Representatives' counsel ("Class Counsel") and CSAC's counsel have thoroughly investigated the facts regarding the claims alleged and the events and transactions underlying the Litigation, through formal and informal discovery, and have made a thorough study of the legal principles applicable to the claims being asserted against CSAC; and

WHEREAS, the Parties have agreed, subject to Court approval, to resolve the Litigation as between Class Representative, the Class, and CSAC under the terms of this Agreement; and

WHEREAS, the Parties and their respective counsel have engaged in arm's length negotiations concerning the settlement of the claims and causes of action being asserted against CSAC in the Counterclaim; and

WHEREAS, the Class Representative and Class Counsel have concluded a settlement with CSAC under the terms of this Agreement will be fair, just, equitable, reasonable, adequate, and in the best interests of Class Representative and the Class: based upon their investigation, study, negotiations, and discovery taken; and considering the contested issues, the expense and time to

prosecute the Litigation against CSAC through trial, the delays and the risks and costs of further prosecution against CSAC, the uncertainties of complex litigation, and the benefits to be received under this Agreement; and

WHEREAS, the Parties acknowledge and agree the Agreement constitutes a compromise in settlement of the claims and causes of action that have been or could be raised by the Class Representative and the Class (or members thereof) against CSAC and/or the other Released Persons as to any collateralized loan or financing from CSAC.

NOW THEREFORE, the undersigned Parties, each intending to be legally bound and acknowledging the sufficiency of the consideration and undertakings in this Agreement, agree, subject to approval of the Agreement by the Court, that the Litigation and the Released Claims against the Released Persons are finally and fully compromised and settled:

1.  **Definitions**

    As used in the Agreement, these terms are defined:

    1.1.  **Cash Fund.** "Cash Fund" means the amount to be paid under Paragraph 3.

    1.2.  **Class**. "Class" has the meaning defined in Paragraph 2.

    1.3.  **Class Counsel**. "Class Counsel" means Class Representatives' counsel, Martin L. Daesch (sole member of MLD Law Firm, LLC), Jesse B. Rochman (sole member of JBR Law, LLC), Craig W. Richards, and OnderLaw, LLC, 110 East Lockwood, St. Louis, Missouri, 63119.

    1.4.  **Class Mail Notice**. "Class Mail Notice" (or "Short-Form Notice") means a notice in a form substantially the same as that attached as **Exhibit A.**

    1.5.  **Class Member**. "Class Member" means any member of the Class who does not timely opt out of the Settlement under Paragraph 8. If a Class Member has died, then the person's estate, heirs, representatives, successors, or assigns is deemed a Class Member.

    1.6.  **Class Member Payment**. "Class Member Payment" means the portion of the Net Distributable Settlement Fund to be paid to the respective Class Members under the Settlement. The Net Distributable Settlement Fund will be divided on a pro rata basis in the amount as provided below to each Class Member by the issuance of a check by the Settlement Administrator. The amount of the Settlement Check issued to Class Members will be determined by multiplying the Net Distributable Settlement Fund by the Class Member's prorated percentage. The Class Member's prorated percentage is equal to a numerator consisting of 10% of the "Amount

2

Electronically Filed - City of St. Louis - November 07, 2022 - 01:23 PM

Financed" on the Class Member's loan plus the "Finance Charge" on the Class Member's loan and a denominator consisting of 10% of the aggregate "Amount Financed" for the Class plus the aggregate "Finance Charge" for the Class.

1.7.    **CSAC's Counsel**. "CSAC's Counsel" means Rebecca Cary of the law firm Childress Ahlheim Cary, LLC, 1010 Market Street, Suite 500, St. Louis, MO 63101; Thomas Magee and Charles Insler of the law firm HeplerBroom LLC, 701 Market Street, Suite 1400, St. Louis, MO 63101; and Timothy Wolf and Benjamin McIntosh of the law firm Watters, Wolf, Bub & Hansmann, 600 Kellwood Parkway, Suite 120, St. Louis, MO 63017.

1.8.    **Court**. "Court" means the St. Louis City Circuit Court, State of Missouri.

1.9.    **Deficiency Write-Off.** "Deficiency Write-Off" means all deficiency account balances in CSAC's records as of the Effective Date that CSAC will write off for the benefit of the Class as provided under Paragraph 3.10.

1.10.    **Effective Date**. The "Effective Date" of the Agreement means the date when all the conditions in Paragraph 11 have occurred.

1.11.    **Final Approval Order**. "Final Approval Order" means an Order consistent with Paragraph 9, finally approving the Agreement and the "Settlement" under Missouri Supreme Court Rule 52.08.

1.12.    **Final Hearing Date**. "Final Hearing Date" means the date set by the Court for the hearing on final approval of the "Settlement."

1.13.    **Final Judgment**. "Final Judgment" means a Judgment of the Court consistent with Paragraph 9.

1.14.    **Gross Deficiency Write-Off Amount.** "Gross Deficiency Write-Off Amount" is the aggregate of deficiency balances reflected as outstanding in CSAC's records on the accounts of the Class Members as of the Effective Date. The deficiency balance amount for each Class Member is what CSAC believes to be the unpaid balance of each member's account regardless of whether CSAC has "written off" the unpaid amount on any portion thereof.

1.15.    **Long-Form Notice.**    "Long-Form Notice" means a notice in a form substantially the same as that attached hereto as **Exhibit B**.

1.16.    **Net Distributable Settlement Fund**. "Net Distributable Settlement Fund" means the "Cash Fund" *plus* any interest earned on the Cash Fund, while in escrow, *minus* the sum of (a) any incentive award approved by the Court and paid to the Class Representative; (b) any litigation

expenses and/or costs approved by the Court and awarded to Class Counsel for this litigation or for ancillary matters; (c) any award of attorneys' fees to Class Counsel; and (d) any and all costs of notice and settlement administration.

1.17. **Person(s).** Person(s) has the broadest meaning possible and includes all legal entities such as corporations, companies, and the like.

1.18. **Preliminary Approval Order**. "Preliminary Approval Order" means an Order consistent with Paragraph 7, preliminarily approving the Settlement, conditionally or preliminarily certifying a class for settlement, directing the issuance of class notice, and scheduling a settlement hearing under Missouri Supreme Court Rule 52.08.

1.19. **Released Persons**. "Released Persons" means CSAC, Federated Mutual Insurance Company on behalf of itself and its affiliates, including Federal Service Insurance Company ("Federated"), and Auto Owners, Inc. ("Auto Owners"), including their current and former officers, directors, successors, predecessors, subsidiaries, parent companies, divisions, employees, attorneys, and agents. "Released Persons" does not include Ally International Insurance Company Ltd., Continental Western Group, Union Insurance Company, Universal Underwriters Insurance Company, Zurich North American or any other insurer other than Federated and Auto Owners.

1.20. **Released Claims**. "Released Claims" means all past and present known and unknown claims, demands, damages, causes of action or suits seeking damages or other legal or equitable relief arising out of or in any way related to the repossession and disposition of personal property collateral in connection with any of CSAC's loans encompassed by the Class or any claim relating to the adequacy or sufficiency of notices and disclosures related to any CSAC direct or indirect collateralized loan encompassed by the Class, whether arising from federal, state or local law or regulation which any of the Class Members have or may have had, or now have, from the beginning of time up through and including the Effective Date, against CSAC. Released Claims may not be construed in any manner that precludes recovery by the Class Representative and Class as contemplated by Paragraphs 3 and 4.

1.21. **Releasors**. "Releasors" means the Class Representative and all Class Members, and each of their respective heirs, executors, administrators, assigns, predecessors, and successors, and any other person claiming jointly with or by or through any or all of them. Releasors does not include: (a) any members of the Class who opt out of the Settlement under Paragraph 8; or (b) any persons not identified by CSAC as a member of the Class.

Electronically Filed - City of St. Louis - November 07, 2022 - 01:23 PM

1.22. **Settlement.** Settlement means the compromise in settlement memorialized in this Agreement.

1.23. **Settlement Administrator.** "Settlement Administrator" means American Legal Claim Services LLC, or any other independent class action settlement administrator company retained by Class Counsel and approved by the Court to administer the Settlement.

1.24. **Settlement Hearing**. "Settlement Hearing" means the hearing on final approval of the class action settlement embodied in this Agreement.

1.25. **Total Class Benefit**. "Total Class Benefit" means the quantifiable benefits conferred upon the Class, including the Cash Fund of $1,575,000.00, the Gross Deficiency Write-Off Amount, which CSAC currently estimates as in excess of $ 8,000,000, and benefits conferred by Paragraph 3.11.

## 2. <u>The Class</u>

2.1. **Class**. The "Class" means all persons to whom CSAC mailed a presale notice or post-sale notice.

2.2. **Exclusions**. Excluded from the Class are all persons whom CSAC has obtained a final deficiency judgment or who filed for bankruptcy after the date on their presale notice and whose bankruptcy ended in discharge rather than dismissal.

2.3. **Class List**. Acting in good faith and using its best efforts, within five (5) business days after the Court issues its Preliminary Approval Order, CSAC must provide a list—in Microsoft Excel spreadsheet format—to Class Counsel of all persons it has identified as in the Class. The list provided to Class Counsel, if ordered by the Court in the Preliminary Approval Order or otherwise, must contain for each member of the Class: (a) their name, Social Security Number, and last known address; and (b) date of purchase, loan number or other loan identifier, the co-borrower or co-buyer, if applicable, the "Amount Financed" and "Finance Charge" from the truth-in-lending information in the loan agreement, the approximate deficiency balance remaining on the loan as of the Effective Date (regardless of whether the amount was written-off or charged-off), and any other reasonable information that Class Counsel and CSAC's Counsel mutually agree is necessary for administration of the Settlement. To protect the privacy and the names, addresses, and other personal information of the members of the Class, the list of Class Members attached as **Exhibit C** may not be filed with the Court. If the Court requires the list

Electronically Filed - City of St. Louis - November 07, 2022 - 01:23 PM

containing all the information provided to Class Counsel be filed, the Parties agree the list must be filed under seal with the Court to protect the privacy and the names and addresses of the members of the Class.

2.4.    **Failure of Condition**. If the Agreement is not approved by the Court, the Agreement, the Settlement (including any modifications made with the consent of the Parties), and any action(s) taken or to be taken in connection therewith, terminate and become null and void and have no further force or effect, the Preliminary Approval Order must be vacated, the Parties will be restored to their respective positions existing prior to the execution of the Agreement. In addition, neither the Agreement, the Preliminary Approval Order, nor any other document relating to any of the foregoing, may be relied on, referred to or used for any purpose with any further proceedings in the Litigation or any related action, including but not limited to class certification. In such case, or if the Agreement terminates or the settlement does not become effective for any reason, the Agreement and all negotiations, court orders and proceedings relating thereto will be without prejudice to the rights of the Parties, who must be restored to their respective positions existing prior to the execution of the Agreement, and evidence relating to the Agreement, and all negotiations, may not be discoverable or admissible.

2.5.    **No Admission of Liability**. The Parties are entering into this Agreement to resolve vigorously disputed claims that have arisen between them and avoid the burden, expense and risk of further litigation. By entering into settlement negotiations and ultimately this Agreement, CSAC is not making any agreement, admission or concession regarding any claims or defenses alleged or asserted. Neither the Agreement nor any of its terms or provisions nor any of the negotiations between the Parties or their counsel may be construed as an admission or concession of any of the Parties of anything, including but not limited to the claims and defenses asserted in the Litigation. The Parties agree that if the Settlement is not approved or anything prevents it from becoming final, nothing contained in the Agreement or the negotiations will be admissible in any way and no Party will seek to admit any such matter.

3. **Settlement Consideration and Distribution of the Qualified Settlement Fund to the Class Members**

3.1    **Funding**. Within 10 business days after the Effective Date and the receipt of an IRS Form W-9 from the Settlement Administrator for the qualified settlement fund established under Paragraph 14, CSAC will cause its insurers to deliver $1,575,000.00 into a qualified

6

settlement fund established by the Settlement Administrator, subject to Paragraph 14, by wire or some other mutually agreeable form of payment. The account will be labeled "Sade Crawford Class Action Qualified Settlement Fund."

3.2  **Conditions for Return**. The Cash Fund must be returned to CSAC's insurer(s) if the Settlement is rescinded, terminated, vacated, voided, or the Effective Date does not arrive for any other reason.

3.3  **Fund Administration**. The Settlement Administrator, subject to such supervision and direction of the Court as may be necessary, shall be responsible for and shall administer and oversee the distribution of the Total Class Benefit, Cash Fund, and Net Distributable Settlement Fund under the terms of the Agreement**.**

3.4  **Reallocation for Opt-Outs**. Subject to the provisions in Paragraph 8, if any members of the Class timely opt out and exclude themselves from the Settlement, the portion of the Net Distributable Settlement Fund attributable to said "opt outs" remain a part of the Net Distributable Settlement Fund and will be reallocated to the Class Members *pro rata*. The Parties shall submit any required revisions to the Court prior to the Final Hearing Date.

3.5  **Class Member Payments**. The Settlement Administrator and/or Class Counsel shall calculate the Total Class Benefit, Cash Fund and Net Distributable Settlement Fund and the Settlement Administrator shall distribute the Net Distributable Settlement Fund to the Class Members in the pro rata amounts set forth in Paragraph 1.6, or as the Court may otherwise determine and approve. The Settlement Administrator shall distribute the Class Member Payments within 30 days after the Effective Date by checks mailed to the Class Members. The Settlement Administrator will re-mail any returned check to any new address disclosed. If any check is returned a second time, or if any unreturned check is deemed void, the Settlement Administrator shall undertake reasonable efforts to locate a current address for the Class Member.

3.6  **Check Expiration**. Following the expiration of 90 days after the Effective Date, all checks first issued to the Class Members as a Class Member Payment not cashed or negotiated will be deemed void, and the Settlement Administrator shall stop payment on such checks. Following the expiration of 180 days after the Effective Date, all checks reissued to the Class Members as a Class Member Payment not cashed or negotiated will be deemed void, and the Settlement Administrator shall stop payment on such checks. All portions of the Net Distributable Settlement Fund remaining 180 days after the Effective Date, less any costs or expenses associated

Electronically Filed - City of St. Louis - November 07, 2022 - 01:23 PM

with stopping payment on such checks, shall be paid to Legal Services of the Eastern District of Missouri.

3.7 **Allocation of Class Member Payments**. For purposes of issuing Settlement Checks, payment to joint or co-obligors or co-borrowers shall be divided equally between co-borrowers and a separate check shall be sent to each co-borrower. Any Settlement Checks for Class Members who are joint or co-obligors or co-borrowers shall be issued and shall be mailed to the last known address. Any Class Member who receives a payment under the Settlement shall be solely responsible for distributing or allocating such payment between or among all co-borrowers on his, her, or their loan, regardless of whether a payment check has been made payable to all or only some of the Class Members' co-borrowers. All Class Members represent and warrant he or she is entitled to receipt of the Class Member Payment and has not assigned by operation of law or otherwise the right to receipt of the Class Member Payment. The Class Members shall, upon receipt of any Class Member Payment, remit the Class Member Payment to any persons having received by assignment or operation of law any right, title or interest to or in the Class Member Payment.

3.8 **No Responsibility**. The Released Persons shall have no responsibility for, interest in, or liability regarding the investment, allocation or distribution of the Net Distributable Settlement Fund, the determination, administration, calculation, or payment of claims, tax liability, the payment or withholding of taxes, or any losses in connection with the Settlement Funds or the implementation of this Settlement.

3.9 **Bankruptcy**. If a Class Member has filed for bankruptcy, the Class Member shall be solely responsible for providing any required notice to the bankruptcy trustee or bankruptcy court of the Settlement and Class Member Payment.

3.10 **Write-Off of Class Members' Account Balances or CSAC's Deficiency Claims.** The original amount and enforceability of the alleged deficiency balances outstanding on each Class Member's account is disputed in good faith. As a result of this good-faith dispute, CSAC shall write-off all deficiency balances on the loans associated with the allegedly defective presale and post-sale notices for the Class Members. The write-off of deficiencies shall operate to reduce the alleged obligations of the Class Members to zero. The Class shall be specifically informed by way of the notice to the class ("Class Mail Notice") of the potential tax consequences of the proposed settlement.

Promptly upon the Effective Date of the Agreement, CSAC will, regarding all Class Members, close all accounts that are the subject of the Litigation and write off any remaining deficiency balances then owed or claimed remaining as of the Effective Date on the Class Members' collateralized loans, as of the Effective Date and will cease all collections and attempts to collect monies regarding said closed accounts and written off balances. Upon Preliminary Approval being granted, CSAC shall not accept payments on Class Members' deficiency balances and will return any payment received by returning the payment instrument to the sender. If final approval is not granted, all collections on the closed accounts and written off balances after the date of Preliminary Approval shall be retained by CSAC. CSAC estimates the Deficiency Write-Off and all account balances and deficiency claims written off under the terms of this Agreement exceeds $8,000,000 and shall be included as part of the Total Class Benefit.

3.11    **Credit Reporting by CSAC.** After the Effective Date, CSAC will cease reporting to the national credit reporting agencies (Experian, Equifax, TransUnion, and Innovis) (the "Credit Bureaus") there is any amount due or owing from the Class Members on the loans that are the subject of this Settlement. Within 90 days after the Effective Date, CSAC will submit to the Credit Bureaus, through an electronic file, a request to delete the trade line for each loan that is the subject of this Settlement.

The Parties acknowledge the Credit Bureaus are separate and distinct entities from CSAC. The Parties acknowledge that CSAC can request, but cannot guarantee, warrant, or take responsibility for the Credit Bureaus regarding changing, deleting, suppressing, or making entries regarding any credit information or other information regarding the Class Members' accounts concerning their loans or financing from CSAC for any loan by CSAC. Provided CSAC has undertaken its obligations in this Paragraph 3, Class Representatives and the Class Members waive all claims, whether arising in contract or tort, common law or statute, and/or federal or state law (including, but not limited to, claims for any damages, attorneys' fees and/or costs) against Released Persons that may arise subsequent to the Agreement or which arise out of or relate to actions required to be taken by CSAC under this provision. If an item fails to get deleted or the reporting reoccurs on any account involved in this Litigation after CSAC's initial request, the only remedy of the Class Members as to Released Parties for the failure of any consumer or credit reporting agencies to amend the consumer or credit report is to request in writing that CSAC again request that its tradeline be deleted as to the relevant finance agreement. It shall be solely the

Electronically Filed - City of St. Louis - November 07, 2022 - 01:23 PM

Electronically Filed - City of St. Louis - November 07, 2022 - 01:23 PM

obligation of the individual Class Members to review their respective credit reports with the consumer or credit reporting agencies to ensure that the consumer or credit reporting agencies have complied with CSAC's request to delete the tradeline.

      3.12    **Tax Reporting by CSAC**. The parties acknowledge that no tax advice has been offered or given by either party, their attorneys, agents, or any other representatives, in the course of these negotiations, and each party is relying upon the advice of its own tax consultant with regard to any tax consequences that may arise as a result of the execution of this agreement.

      3.13    **Settlement Administrator**. Any costs, fees, and expenses, including but not limited to class administration, shall be paid from the Cash Fund or by Class Counsel as the Court may direct and approve.

      3.14    **Judgment**. Notwithstanding anything to the contrary, CSAC will not contest a judgment being entered against it in an amount to be determined by the Court, comprising damages for wrongful repossession, libel/slander/defamation, invasion of privacy, and other uncertain or hard to quantify damages, plus pre-judgment interest and post-judgment interest. Crawford will seek a judgment equal to the statutory damages provided in § 9-625, the time price differential ("finance charge") paid by the Class, plus prejudgment interest and post-judgment interest. The judgment shall indicate that only $1,575,000.00 may be satisfied from CSAC's assets for its obligations required under this Agreement and any remaining amount may only be satisfied from CSAC's other insurers, or its insurance agents or insurance brokers. No amount of the judgment that exceeds $1,575,000.00 will be executable against Federated or Auto Owners. Other than $1,575,000.00, the judgment may not be satisfied from attaching or otherwise acquiring any assets of CSAC. No portion of the judgment may be satisfied from attaching or otherwise acquiring any assets of the following companies:

    Schicker Automotive Group;
    Schicker Ford St. Louis Inc.;
    Ford Groves Motor Company;
    Auto Buy Credit Inc.;
    McMahon Ford Company Inc. d/b/a Schicker Ford of St. Louis;
    MLBG Investments Inc. d/b/a Schicker Ford of Union;
    McMahon Ford Inc. d/b/a Schicker Pre-Owned Supercenter;
    Washington Square Investment Company d/b/a Schicker Chrysler Dodge Jeep Ram of Washington;
    CAC;
    CNAC;

Electronically Filed - City of St. Louis - November 07, 2022 - 01:23 PM

Midwest Acceptance;

MLB Family Investments, LLC; and

3300 S. Kingshighway, LLC.

No portion of the judgment may be satisfied from attaching or otherwise acquiring any assets of the employees, officers, members, directors or shareholders of the companies listed above.

CSAC will cooperate with Crawford in obtaining the judgment, including waiving its rights to: (1) a jury trial; (ii) present evidence; (iii) object to evidence; (iv) question witnesses called by Crawford; (v) make argument to the Court in opposition to Crawford's arguments; and (vi) appeal any decision or judgment of the Court.

Notwithstanding anything to the contrary, CSAC will assign to the Class all its claims and rights against its insurers, insurance agents and brokers (excluding Federated and Auto Owners) who issued policies in effect during the class period, including without limitation, any claims of bad faith failure to settle and breach of the duty to defend. If the Court grants final approval, then the Class may pursue claims against insurers to recover the judgment. CSAC agrees to cooperate in the collection efforts against the insurers, insurance agents and brokers.

Notwithstanding anything to the contrary, CSAC will not oppose Class Counsel seeking its reasonable costs, including administration costs and costs in pursuing/defending claims against the insurers or insurance agents and brokers, from any recovery obtained. CSAC will not oppose Class Counsel seeking up to 45% of any monetary recovery from CSAC's insurers or insurance agents and brokers as reasonable attorney's fees. The Class Members shall receive the funds remaining from any recovery from the insurers or insurance agents and bankers after attorney's fees and costs are deducted.

4. **Incentive Award, Attorneys' Fees and Costs and No Publicity**

4.1. **Incentive Award**. Class Counsel and/or Class Representative may petition the Court for the payment of an incentive award for Crawford in a total amount not to exceed $10,000 in recognition of services rendered for the benefit of the Class throughout the Litigation. Any incentive award approved by the Court shall be paid from the Cash Fund and not in addition to it. Any incentive award approved by the Court shall be deducted from the Cash Fund and distributed to the Class Representative with her Class Member Payment. CSAC will not object to Class Representative applying to the Court for and/or receiving an incentive award in the above-stated amount. The Class Representative shall provide a form W-9 to the Settlement Administrator prior

to having the Settlement Administrator issue the award.

4.2. **Cost Award**. Class Counsel and/or Class Representative may petition the Court for an award of litigation costs and expenses. Any such litigation costs and expenses will be paid from the Cash Fund and distributed to Class Counsel the first business day after the Cash Fund is received by the Settlement Administrator. CSAC will not object to Class Counsel or Class Representatives applying to the Court for and receiving an award of litigation costs and expenses from the Cash Fund not to exceed $20,000.

4.3. **Fee Award**. Class Counsel and/or Class Representative may also petition the Court for an award of attorney's fees based on a percentage of the Total Class Benefit. Any such fee award approved by the Court will be paid from the Cash Fund and distributed to Class Counsel the first business day after the Cash Fund is received by the Settlement Administrator. CSAC will not object to Class Counsel or Class Representative applying to the Court for, and receiving an award of, attorneys' fees not to exceed 35% of the Total Class Benefit.

4.4. **No Publicity**. Class Counsel agrees, as part of the consideration for this Settlement, it will not in any way publicize this Settlement other than providing the class notices as specifically set forth in this Agreement or by Court Order. As such, Class Counsel shall not publicize the Settlement, nor will they issue any press releases or speak to the press about the litigation and/or Settlement other than to direct them to the Class Notice provided for herein.

5. **<u>Releases</u>**

5.1. **Final Release**. Upon CSAC's compliance with its obligations under this Agreement, Releasors, by operation of the Agreement and the judgment in the Final Order and Judgment, shall be deemed without further action by any person or the Court, (i) to have fully, finally and forever released, settled, compromised, relinquished, and discharged all of the Released Persons of all Released Claims; (ii) and to be forever barred and enjoined from instituting or further prosecuting in any forum including, but not limited to, any state, federal, or foreign court, or regulatory agency, the Released Claims. The Parties agree that the Released Persons will suffer irreparable harm if any Class Member takes actions inconsistent with this release, and that the Released Persons may seek an injunction on such action without further showing of irreparable harm.

Electronically Filed - City of St. Louis - November 07, 2022 - 01:23 PM

5.2.    **Known and Unknown Claims**. The Releasors acknowledge and agree that they know they may discover material or immaterial facts besides or different from those which they now know or believe to be true regarding the subject matter of the Release, but they intend to and do, upon the Effective Date of the Agreement, fully, finally and forever settle and release each and every of the Released Persons from every Released Claim, known or unknown, suspected or unsuspected, accrued or not accrued, contingent or matured, which now exists, may exist, or may heretofore have existed, without regard to the subsequent discovery or existence of such different or additional facts.

5.3.    **Binding**. Subject to Court approval, each Class Member shall be bound by the Agreement and release even if they never received actual, prior notice of the Litigation or the Settlement in the Class Mail Notice or otherwise. The Release and agreements in this paragraph shall apply to and bind all Class Members, including those Class Members whose Class Mail Notices are returned as undeliverable, and those for whom no current address can be found.

5.4.    **Generality of the Release**. Nothing in this section is intended to limit the generality of the release and covenant not to sue set forth above. It is the purpose and intent of this Settlement Agreement that all claims, actions and causes of action by the Class Representative and Class Members as set forth in the Counterclaim, and/or any claims under the financing agreement(s) which are the subject matter of the instant proceeding, shall forever be barred, with the respect to CSAC, Federated, and Auto Owners. There shall be no release in effect as to any other CSAC insurers, insurance agents, or insurance brokers. The doctrines of *res judicata* and collateral estoppel shall apply to all Class Members with respect to all issues of law and fact and matters of relief within the scope of all filed complaints in this Action, the Released Claims, and this Settlement Agreement. If a Class Member seeks, in a separate action or proceeding, relief that would be inconsistent with the terms of this Settlement Agreement, CSAC or any Released Party may by affidavit or otherwise in writing, advise the other Parties and the court or other forum in which such action or proceeding is brought, that such relief in that action or proceeding is unwarranted. If requested by CSAC or any Released Party, the Class Representative or Class Counsel shall also advise the Court or other forum in which such action or proceeding is brought, in writing, that such relief in that action or proceeding is unwarranted. Provided that, since this Settlement Agreement provides for review by the Court, any of the Parties may recommend that matters raised in such separate action or proceeding should be submitted to the Court for resolution

Electronically Filed - City of St. Louis - November 07, 2022 - 01:23 PM

under the terms of this Settlement Agreement.

**6.**    **Representations and Stipulations**

6.1.    **CSAC's Representations**. CSAC represents, warrants, and declares that:

6.1.1.    it has acted in good faith and has used its best efforts in identifying the members of the Class;

6.1.2.    to the best of CSAC's actual knowledge, there are no members of the Class other than those identified; and

6.1.3.    the total amount due and owing from the Class Members for "deficiencies" on the Effective Date, if such totals could be determined or located, is in excess of $8,000,000.

6.2.    **Class Counsel's Representations**. Except for Crawford and Kellen Darnell Buril, Class Counsel represent and warrant to CSAC they have not been retained by any client to commence a new lawsuit or pursue any claims or right of relief against CSAC regarding any of the Released Claims. In addition, Class Counsel agrees they will not solicit the right to legally represent any member or members of the Class who opt(s) out of the Class and Settlement regarding the Released Claims unless the Agreement terminates or does not become effective. Class Counsel also warrant they do not presently have any intention of seeking to represent any clients who have, or claim to have, any claims against any of the Released Parties. To the fullest extent permitted by law, Class Counsel shall not actively advertise for or undertake to solicit any person to sue CSAC on any claim or theory.

Class counsel will cause Kellen Buril to dismiss his lawsuit with prejudice within 10 business days of the Settlement Fund being fully funded by the $1,575,000.00.

**7.**   **Preliminary Approval Order**

The Parties shall promptly move the Court for a Preliminary Approval Order that:

7.1.    Preliminarily approves the Agreement as fair, reasonable and adequate under Missouri Supreme Court Rule 52.08 subject to a final determination by the Court;

7.2.    Stays all proceedings in the Litigation, enjoins the prosecution by Class Members who do not timely and validly exclude themselves from this Settlement of any non-filed or pending individual or class claims asserting any claim(s) encompassed by the claims released above;

7.3.    Approves a form of mailed notice substantially like the Class Mail Notices attached

Electronically Filed - City of St. Louis - November 07, 2022 - 01:23 PM

hereto as **Exhibit A** to be sent to the members of the Class by first-class mail or email at the best updated address available to CSAC or any better subsequent address determined by the Settlement Administrator;

7.4.     Approves a Long-Form Notice (substantially like the form attached hereto as **Exhibit B**) that contains more extensive information than the Class Mail Notice and that will be provided to members of the Class by request and on a website;

7.5.     Directs the Settlement Administrator to mail the Class Mail Notice promptly after entry by the Court of the Preliminary Approval Order to the Class by first-class mail or email to the last known address of such persons and to provide the Long-Form Notice to members of the Class on a website or otherwise if Class Members request it;

7.6.     Schedules a hearing for final approval of the Agreement;

7.7.     Establishes a procedure for members of the Class to opt out and setting a date, approximately 30 days after the mailing of class notice or earlier as the Court directs, after which no member of the Class shall be allowed to opt out of the Class;

7.8.     Establishing a procedure for the members of the Class to appear and/or object to the Settlement and setting a date, approximately 30 days after the mailing of the Class Mail Notices or earlier as the Court directs, after which no member of the Class shall be allowed to object; and

7.9.     Containing such other provisions consistent with the terms and provisions of the Agreement as the Court may deem advisable.

## 8.     Opt-Outs and Objections by Members of the Class

8.1.     **Procedure for Opt-Out Requests**. The deadline for opt-out requests shall be set forth in the Preliminary Approval Order. Any request to opt out must be in writing and must include the name, address, telephone number, last four digits of the Social Security Number of the Class Member seeking to opt out, and a statement that the Class Member and all other borrowers named on the Class Member's Retail Installment Contract and Security Agreement or governing loan agreement are seeking exclusion. Any opt-out request must be signed by each person who was a party to the Retail Installment Contract and Security Agreement or governing loan agreement that is the subject of this Litigation, unless such person is deceased. If a party to the Retail Installment Contract and Security Agreement or governing loan agreement is deceased, a copy of the death certificate for such person shall be submitted with the opt-out request. Any opt-

out request must include a reference to "*CSAC v. Sade Crawford*, Case No. 1522-AC03346-02" and be mailed to the Settlement Administrator. Class Counsel will cause the Settlement Administrator to send all opt-out requests to Class Counsel and CSAC's Counsel via email within two days after receiving said requests. To be timely and effective, any opt-out request must be postmarked by the date established by the Court in the Preliminary Approval Order. No member of the Class may opt out by having a request to opt out submitted and signed by an actual or purported agent or attorney acting on behalf of the Class Member. No opt-out request may be made on behalf of a group of Class Members. Each member of the Class not submitting an opt-out request that substantially complies with Paragraph 8 shall be included in the Class and deemed a Class Member. The Settlement Administrator shall provide to the Court, by the date of the Final Approval Hearing, a list of all persons, by reference to a unique identifier or the last four digits of their Social Security Number, who have timely and adequately filed a request to be excluded from the Settlement.

8.2. **Opt-Out Limit**. If 10% or more of the class opts out of the Settlement, then the parties will have 21 days to determine whether to withdraw from the settlement. If the option to rescind is exercised, then the Settlement Agreement is void, and the Parties shall return to the status quo as if the Parties had not entered into the Settlement Agreement, and nothing contained in the Agreement or the settlement negotiations shall be discoverable or admissible in Court. If the option to rescind is exercised this Agreement may not be used as evidence or otherwise be used in any court filing or proceeding. Notwithstanding anything to the contrary in this Agreement, if CSAC elects to rescind this Agreement under this Paragraph 8.2, CSAC will reimburse Class Counsel for the documented expenses and costs actually incurred by the Settlement Administrator before CSAC exercised its unilateral rescission right.

8.3. **Procedure for Objections to Settlement**. Any member of the Class who wishes to object to the Settlement or to the incentive awards or the awards of expenses, costs and/or attorneys' fees must file a written notice of objection, including supporting papers as described further below (collectively referred to as the "Notice of Objection"), with the Court on or prior to the date established by the Court in the Preliminary Approval Order. To determine timeliness, a Notice of Objection shall be deemed to have been submitted when received and filed with the Clerk of Court. Copies of the Notice of Objection must also be postmarked by the date established by the Court in the Preliminary Approval Order, which shall be no later than ten (10) days before

Electronically Filed - City of St. Louis - November 07, 2022 - 01:23 PM

Electronically Filed - City of St. Louis - November 07, 2022 - 01:23 PM

the Final Hearing Date.  Copies of any Notice of Objection shall also be sent to:

> Martin L Daesch, Esq.
> Jesse B. Rochman, Esq.
> Onder Law, LLC
> 110 E. Lockwood Avenue
> St. Louis, Missouri 63119
> (on behalf of the Class)
>
> and
>
> Charles N. Insler, Esq.
> HeplerBroom, LLC
> 701 Market Street, Suite 1400
> St. Louis, Missouri 63101
> (on behalf of CSAC)

The Notice of Objection must be in writing and shall specifically include:

(i) The name, address, telephone number, facsimile number (if available), email address (if available) and last four digits of the Social Security Number of the Class Member filing the objection;

(ii) A statement of each objection asserted;

(iii) A detailed description of the facts underlying each objection;

(iv) Any loan documents in the possession or control of the objector and relied upon by the objector as a basis for the objection;

(v) If the objector is represented by counsel, the name, address, telephone number, facsimile number (if available) and email address (if available) of the counsel, and a detailed description of the legal authorities supporting each objection;

(vi) If the objector plans to utilize expert opinion and/or testimony as part of the objection(s), a written expert report from all proposed experts that outlines each of the expert's opinions and the factual and substantive bases thereof;

(vii) If the objector plans to call a witness or present other evidence at the hearing, the objector must state the identity of the witness and identify any documentary evidence by attaching the documents to the objection, and the objector must provide any other evidence that the objector intends to present;

Electronically Filed - City of St. Louis - November 07, 2022 - 01:23 PM

(viii)    A statement of whether the objector intends to appear at the hearing;

(ix)    A copy of any exhibits which the objector may offer during the hearing;

(x)    A reference to *"CSAC v. Sade Crawford*, Case No. 1522-AC03346-02;" and

(xi)    **A certification under 28 U.S.C. § 1746 or similar state law in substantially the following form: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)".**

Attendance at the final hearing by an objector is optional. Any Class Member who does not make his or her objection in the manner provided shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness, adequacy, or reasonableness of the proposed settlement or any other provision of the Agreement. The agreed-upon procedures and requirements for filing objections should ensure the efficient administration of justice and the orderly presentation of any Class Members' objections to the Agreement, in accordance with such Class Members' due process rights. The Preliminary Approval Order and Long-Form Notice shall require all Class Members who have any objections to serve by mail or hand delivery such objection upon Class Counsel and CSAC's Counsel at the addresses in the Long-Form Notice no later than the objection date set by the Court. If the objecting Class Member opts to serve the objection upon Class Counsel and CSAC's Counsel by mail, the objection must be postmarked no later than the objection date set by the Court. The Preliminary Approval Order shall further provide that objectors who fail to properly or timely file their objections with the Clerk of the Court with the required information and documentation, or fail to serve them, shall not be heard during any hearings, nor shall their objections be considered by the Court.

Under no circumstances shall CSAC, Class Counsel, the Class Representative, or the Released Parties be responsible for paying any monies or other consideration to objectors and/or counsel for objectors under the terms of this Settlement Agreement or otherwise.

**9.**    <u>**Final Approval Order and Final Judgment**</u>

9.1.    **Final Approval Order**. Class Representative, Class Counsel, and CSAC agree they will request the Court to enter, after the hearing on final approval of the Agreement, a Final Approval Order certifying the Class and finding that the Agreement is fair, reasonable, and

Electronically Filed - City of St. Louis - November 07, 2022 - 01:23 PM

adequate and in the best interest of the Class and ordering the Parties to carry out the Agreement.

9.2.    **Final Judgment**. Class Representative, Class Counsel, and CSAC agree they will request the Court to enter a Final Judgment consistent with Paragraph 3.14 and noting the Court's decision to reserve continuing jurisdiction over the enforcement of the Agreement and the administrator and distribution of the Settlement Funds and any funds recovered under the judgment.

9.3.    **Final Accounting**. The Settlement Administrator, with the assistance of Class Counsel, shall file a final accounting with the Court within 300 days after the Effective Date. This final accounting shall contain a summary of all the distributions of the Cash Fund. Upon receipt of the final accounting, the Court, if satisfied with such report, shall file a Notice of Acceptance of Final Accounting indicating the Court's approval. If the Court requires clarification or additional information, the Parties shall furnish such information within 10 business days after such request or within the timeframe ordered by the Court.

**10.    Certifications to the Court**

10.1.    **Affidavit about Initial Notice Mailing**. By the Final Hearing Date, the Settlement Administrator shall file with the Court an affidavit verifying the Court-approved Class Mail Notices have been sent by first-class mail and the Long-Form Notice has been provided to members of the Class on a website or otherwise upon the request of Class Members.

10.2.    **Affidavit about Undeliverable Notices**. By the Final Hearing Date, the Settlement Administrator shall file with the Court an affidavit verifying it has complied with the procedures described in Paragraph 13 regarding all Class Mail Notices returned as undeliverable.

**11.    Effectiveness of Settlement Agreement**

The "Effective Date" of the Agreement shall be the date when each of the following conditions have occurred:

11.1.    A Final Approval Order has been entered by the Court.

11.2.    A Final Judgment has been entered by the Court.

11.3.    The Final Approval Order and the Final Judgment entered have become final for purposes of appeal because of (i) the expiration of the time for appeals therefrom with no appeal having been taken or, (ii) if review of the order, or any portion thereof, is sought by any person, the matter has been fully and finally resolved by the appellate court(s) and the time for seeking any higher level of appellate review has expired.

11.4.    If any material portion of the Agreement, the Final Approval Order, or the Final Judgment is vacated, modified, or otherwise altered on appeal, any Party may, within seven business days after such appellate ruling, declare that the Agreement has failed to become effective and in such circumstances the Agreement shall cease to be of any force and effect as provided in Paragraph 12.

11.5.    Once all obligations of CSAC and/or its insurer have been completed as required by the Agreement, Class Counsel shall file a Satisfaction of Judgment in this case within 10 business days after CSAC has filed an affidavit of compliance with the Court affirming all obligations of CSAC and/or its insurer(s) have been completed as required by the Agreement.

**12.**    **Failure of Condition**

If the Agreement fails to become effective, the orders, judgment, and dismissal to be entered under the Agreement shall be null and void or otherwise vacated, and the Parties will be returned to the status quo as if the Agreement had never been entered. In addition, the Agreement and all negotiations, court orders and proceedings relating to the Agreement shall be without prejudice to the rights of all Parties, and evidence relating to the Agreement and all negotiations shall not be admissible or discoverable.

**13.**    **Class Mail Notice Forms**

13.1.    **Address Update**. Before mailing the Class Mail Notices, the Settlement Administrator will update the addresses by the United States Postal Service's National Change of Address database or another address database service (e.g., Accurint, Intelius). The Settlement Administrator will re-mail any returned notices to any new address disclosed. If any notice is returned a second time, the Settlement Administrator shall undertake reasonable efforts to locate a current address for the Class Members. The portion of the Net Distributable Settlement Fund attributable to where the Settlement Administrator is unable to obtain a current address shall remain a part of the Net Distributable Settlement Fund and will be reallocated to the Class Members with valid current addresses *pro rata*. The notices shall be mailed within the later of 20 business days after the Preliminary Approval Order or 10 business days after CSAC provides Settlement Administrator with the Class List. Also, within 20 business days after the Preliminary Approval Order, the Settlement Administrator will provide the Court-approved Long-Form Notice on a website the Class Members can access. If requested by any Class Member, the Settlement Administrator shall also mail a copy of the Long-Form Notice to the requesting member by first-

Electronically Filed - City of St. Louis - November 07, 2022 - 01:23 PM

Electronically Filed - City of St. Louis - November 07, 2022 - 01:23 PM

class mail.

13.2. **Release Regardless of Receipt of Notice**. Subject to Court approval, all Class Members shall be bound by the Agreement and the Released Claims shall be released even if a Class Member never received actual notice of the Litigation or the Settlement. Further, the Parties expressly acknowledge and agree that a Final Judgment shall be entered by the Court barring the re-litigation of the Released Claims, regardless of whether the claims were asserted, to the fullest extent of the law, and that any judgment shall be entitled to Full Faith and Credit in any other court, tribunal, forum, including arbitration forum, or agency.

**14.** **Qualified Settlement Fund**

14.1. **Treasury Regulations**. The Cash Fund shall constitute a "qualified settlement fund" ("QSF") within the meaning of Treasury Regulation Section 1.468B-1 promulgated under Section 468B of the Internal Revenue Code of 1986 as amended. The Settlement Administrator shall be the "administrator" within the meaning of Treasury Regulation §1.468B-2(k)(3).

14.2. **EIN**. Upon establishment of the QSF, the Settlement Administrator shall apply for an employer identification number for the QSF utilizing Internal Revenue Service Form SS-4 and in accordance with Treasury Regulation §1.468B-2(k)(4).

14.3. **Relation-Back Election**. If requested by either CSAC or the Settlement Administrator, the Settlement Administrator and CSAC shall fully cooperate in filing a relation-back election under Treasury Regulation §1.468B-1(j)(2) to treat the QSF as coming into existence as a settlement fund as of the earliest possible date.

14.4. **Tax Returns and Statements**. Class Counsel shall cause the Settlement Administrator to file, on behalf of the QSF, all required federal, state, and local tax returns, information returns and tax withholdings statements under Treasury Regulation §1.468B-2(k)(1) and Treasury Regulation §1.468B-2(1)(2)(ii).

**15.** **General Provisions**

15.1. **Best Efforts to Effectuate Settlement**. The Parties' counsel shall use their best efforts to cause the Court to give Preliminary Approval to this Agreement as promptly as practicable, to take all steps contemplated by this Agreement to effectuate the settlement on the stated terms and conditions and to obtain Final Approval of this Agreement.

15.2. **Entire Agreement**. This Agreement constitutes the full, complete and entire understanding, agreement and arrangement of and between the Class Representative and the Class

Members and CSAC regarding the Settlement and the Released Claims against the Released Persons. The Agreement supersedes all prior oral or written understandings, agreements, and arrangements between the Parties regarding the Settlement and the Released Claims against the Released Persons. Except for those set forth expressly in the Agreement, there are no agreements, covenants, promises, representations or arrangements between the Parties regarding the Settlement and/or the Released Claims against the Released Persons.

    15.3. **Modification in Writing**. This Agreement may be altered, amended, modified or waived, in whole or in part, only in a writing signed by all Parties, and approved by Court, if necessary. The Agreement may not be amended, altered, modified or waived, in whole or in part, orally.

    15.4. **Ongoing Cooperation**. The Parties hereto shall execute all documents and perform all acts necessary and proper to effectuate the Agreement. The execution of documents must take place prior to the Final Hearing Date.

    15.5. **Duplicate Originals/Execution in Counterparts**. All Parties, Class Counsel and CSAC's Counsel shall sign two copies of the Agreement, and each such copy shall be an original. The Agreement may be signed in one or more counterparts. All executed copies of the Settlement Agreement and photocopies thereof (including facsimile copies of the signature pages) shall have the same force and effect and shall be as legally binding and enforceable as the original.

    15.6. **No Reliance**. Each Party to the Agreement warrants he, she or it is acting upon his, her, or its independent judgment and upon the advice of his, her, or its own counsel and not in reliance upon any warranty or representation, express or implied, of any nature or kind by any other party, other than the warranties and representations made in the Agreement.

    15.7. **Governing Law**. The Agreement shall be interpreted, construed, enforced, and administered under the laws of Missouri, without regard to conflict of laws rules. The Agreement shall be enforced in the St. Louis City Missouri Circuit Court. Class Representative, the Class Members, CSAC, Federated, and Auto Owners waive any objection that each such party has to the venue of such suit, action, or proceeding and irrevocably consent to the jurisdiction of the St. Louis City Missouri Circuit Court in any such suit, action or proceeding, and agree to accept and acknowledge service of all process which may be served in any such suit, action or proceeding.

    15.8. **Reservation of Jurisdiction**. The Parties agree that the Court should retain jurisdiction to enforce the terms of the Agreement.

Electronically Filed - City of St. Louis - November 07, 2022 - 01:23 PM

15.9. **Binding on Successors**. Upon execution, the Agreement shall bind and shall inure to the benefit of the Parties and their respective successors, assigns, executors, administrators, heirs and legal representatives.

15.10. **Mutual Preparation**. The Agreement shall not be construed more strictly against one party than another merely because it may have been prepared by counsel for one of the Parties, it being recognized that because of the arm's length negotiations between the Parties, all Parties have contributed to the preparation of the Agreement.

15.11. **Gender Neutrality**. All personal pronouns used in the Agreement, whether used in the masculine, feminine or neutral gender, shall include all other genders, and the singular shall include the plural and vice versa.

15.12. **Taxes**. All Class Members are responsible for any tax obligations or consequences that might arise from this Agreement, including any federal, state and local income taxes that may be due on any payments made to them and any other benefits they receive under the Agreement, including benefits related to the Deficiency Write-Off. All Class Members further agree to indemnify and hold CSAC harmless from any claims, demands, deficiencies, levies, assessments, executions, judgments, penalties, taxes, attorneys' fees, or recoveries by any governmental entity against CSAC for any failure by any Class Member to pay taxes due and owing, if any. Under no circumstances shall CSAC have any liability for taxes or tax expenses under this Agreement.

However, CSAC will not issue an IRS Form 1099 to Class Members. The Parties believe this Settlement does not create a taxable event under IRS regulations governing the discharge of indebtedness under the "contested liability" or "disputed debt" doctrine.

15.13. **Authority**. Each of the Parties to the Agreement represents, covenants and warrants that (a) they have the full power and authority to enter into and consummate all transactions contemplated by the Agreement and have duly authorized the execution, delivery and performance of the Agreement and (b) the person executing the Agreement has the full right, power and authority to enter into the Agreement on behalf of the party for whom he/she has executed the Agreement, and the full right, power and authority to execute all necessary instruments, and to fully bind such party to the terms and obligations of the Agreement.

15.14. **Exhibits**. The exhibits attached to the Agreement are incorporated as though fully set forth in the Agreement.

15.15. **Own Fees and Costs**. Except as otherwise provided in this Agreement, each Party

Electronically Filed - City of St. Louis - November 07, 2022 - 01:23 PM

Electronically Filed - City of St. Louis - November 07, 2022 - 01:23 PM

shall bear his, her, or its own attorneys' fees, costs, and expenses in the prosecution, defense, or settlement of the Litigation.

15.16. **Miscellaneous**. The terms and amount of the Settlement Fund shall not be disclosed or advertised by any Party or their attorneys to the general public, and any disclosure shall be limited to the Court only as necessary to obtain court approval or as otherwise required by the Court and to the Class Members only in the Class Notice as approved by all parties and the Court.

[Remainder of page intentionally left blank]

IN WITNESS WHEREOF, the undersigned, being duly authorized, have caused the Agreement to be executed as of November **4**, 2022.

**Sade Crawford**

Dated: November **4**, 2022

Sade Crawford, for herself and the Class Members

**CSAC**

Dated: November _____, 2022

By:_____

Name:_____

Title:_____

**Class Counsel**

Dated: November **4**, 2022

By: _____

**CSAC's Counsel**

Dated: November _____, 2022

By:_____

25

Electronically Filed - City of St. Louis - November 07, 2022 - 01:23 PM

IN WITNESS WHEREOF, the undersigned, being duly authorized, have caused the Agreement to be executed as of November _____, 2022.

**Sade Crawford**

Dated: November _____, 2022

_____

Sade Crawford, for herself and the Class Members

**CSAC**

Dated: November **3ʳᵈ**, 2022     By: _____

Name: John Schieber _____

Title: Manager _____

**Class Counsel**

Dated: November_____, 2022     By: _____

**CSAC's Counsel**

Dated: November **7**, 2022     By: _____

Electronically Filed - City of St. Louis - November 07, 2022 - 01:23 PM

## EXHIBITS AND SCHEDULES

Exhibit A – Class Mail Notice

Exhibit B – Long Form Mail Notice

Exhibit C – Class List